# 23-155-cv

## United States Court of Appeals for the Second Circuit

40 DAYS FOR LIFE, A NONPROFIT CORPORATION OF THE STATE OF TEXAS,
WHITE PLAINS 40 DAYS FOR LIFE, AN UNINCORPORATED ASSOCIATION
OF THE STATE OF NEW YORK, OKSANA HULINSKY, AND
REGINA JOY CREARY MOLINELLI,

*Plaintiffs-Appellants,*

JANE DOE, SALLY ROE,

*Plaintiffs,*

v.

COUNTY OF WESTCHESTER,

*Defendant-Appellee.*

COUNTY OF WESTCHESTER COUNTY DEPARTMENT OF PUBLIC SAFETY, TERRANCE
RAYNOR, ACTING COMMISSIONER OF THE WESTCHESTER DEPARTMENT OF PUBLIC
SAFETY, IN HIS OFFICIAL CAPACITY, NEW ROCHELLE POLICE DEPARTMENT, CITY OF
WHITE PLAINS DEPARTMENT OF PUBLIC SAFETY, GEORGE LATIMER, CHIEF
EXECUTIVE OF THE COUNTY OF WESTCHESTER, IN HIS OFFICIAL CAPACITY,

*Defendants.*

ON APPEAL FROM A CIVIL JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### BRIEF OF APPELLEE WESTCHESTER COUNTY

JUSTIN R. ADIN
Deputy County Attorney
SHAWNA C. MACLEOD
Senior Assistant County Attorney

JOHN M. NONNA
Westchester County Attorney
148 Martine Avenue
600 Michaelian Office Building
White Plains, New York 10601
Telephone: (914) 995-2690
*Attorneys for Appellee Westchester County*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF JURISDICTION ........................................................... 3

STATEMENT OF THE ISSUES ................................................................ 3

STATEMENT OF FACTS .......................................................................... 4

    1. Chapter 425 ........................................................................................ 4

    2. Procedural History ........................................................................... 5

    3. Summary of Appellants' Allegations Relating to Standing ...................... 9

SUMMARY OF ARGUMENT ................................................................. 11

STANDARD OF REVIEW ....................................................................... 12

ARGUMENT ............................................................................................ 13

    I. The Instant Appeal Should Be Dismissed .................................. 13

        A. The Order is Not Appealable ................................................. 13

        B. The Instant Appeal Violates the Policy Against Piecemeal
            Appeals ..................................................................................... 14

    II. Appellants Lack Standing ............................................................ 16

        A. The Individual Appellants Have Not Established Standing .............. 16

        B. The Organizational Appellants Lack Standing ..................... 19

        C. This Court Should Not Reach the Merits ............................. 22

    III. The District Court Did Not Abuse Its Discretion ................... 23

        A. Appellants Cannot Succeed On the Merits ........................... 23

            *i. There Is No Dispute That Hill Is Binding* .......................... 24

## TABLE OF CONTENTS
### (Continued)

**Page**

*ii. Even if a Dispute Existed, Hill Controls* ............................................. 24

*iii. Section 425.31(i) Passes Intermediate Scrutiny* ................................. 27

    *a. Section 425.31(i) Is Content Neutral* ...................................... 27

    *b. Section 425.31(i) Serves a Significant Governmental Interest* .............................................................................. 30

    *c. Section 425.31(i) Is Narrowly Tailored* ................................. 31

    *d. Section 425.31(i) Leaves Open Alternative Channels for Communication* ............................................................... 36

B. Appellants Did Not Establish Irreparable Harm ......................... 38

C. The Balance of the Equities/Public Interest Weigh Against Appellants ......................................................................... 39

CONCLUSION .............................................................................. 40

# TABLE OF AUTHORITIES

## Cases

*Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391 (D.C. Cir. 2017) .................................................................................................... 26

*Adam v. Barr*, 792 F. App'x 20 (2d Cir. 2019), *cert. denied* 140 S. Ct. 1119 (2020) ..17, 18, 19

*Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973) ......................................... 22

*Apt. Owners Advisory Council v. Marks*, No. 21 CV 10175 (VB), 2022 U.S. Dist. LEXIS 169873 (S.D.N.Y. Sept. 20, 2022) ........................................................ 22

*Ashwander v. TVA*, 297 U.S. 288 (1936) (Brandeis, J. concurring) ................... 23

*Babbit v. UFW Nat'l Union*, 442 U.S. 289 (1979) ............................................... 17

*Bond v. United States*, 572 U.S. 844 (2014) ................................................... 16, 22

*Bruni v. City of Pittsburgh*, 141 S. Ct. 578 (Statement of Thomas, J.) .............. 26

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016) ............................... 17, 18

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S. Ct. 1464 (2022) ................. 28

*Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167 (2d Cir. 2021) ............... 20, 21

*Defense Distributed v. AG N.J.*, 972 F.3d 193 (3d Cir. 2020) ............................ 13

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) ........................ 33

*Doe v. N.Y. State Dep't of Health*, 20-cv-4817 (GHW), 2020 U.S. Dist. LEXIS 170560 (S.D.N.Y. Sep. 17, 2020) ............................................................... 6

*Escambia County v. McMillan*, 466 U.S. 48 (1984) (*per curiam*) ..................... 22

*Field Day, LLC v. County of Suffolk*, 463 F.3d 167 (2d Cir. 2006) ................... 12

*Frisby v. Schultz*, 487 U.S. 474 (1988) ............................................................... 38

*Hedges v. Obama*, 724 F.3d 170 (2d Cir. 2013) ................................................ 17

*Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640 (1981) ..........................31, 32, 37

*Hill v. Colorado*, 530 U.S. 703 (2000) ...........................................................................passim

*Hous. Works v. Kerik*, 283 F.3d 471 (2d Cir. 2002) ..................................................... 28

*Jaen v. Sessions*, 899 F.3d 182 (2d Cir. 2018) ....................................................... 12

*JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31 (2d Cir. 2015) ................................... 23

*Keepers, Inc. v. City of Milford*, 807 F.3d 24 (2d Cir. 2015) ................................................... 16

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015)...............................................17, 19

*Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994) ......................................... 30, 33

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012), *cert. denied*, 568 U.S. 1212
(2013) ......................................................................................................................28, 36, 37

*Marcavage v. Syracuse Police Dep't*, 515 F. App'x 14 (2d Cir. 2013) ................................... 38

*March v. Mills*, 867 F.3d 46 (1st Cir. 2017) ......................................................... 26

*McCullen v. Coakley*, 573 U.S. 464 (2014) ...........................................................passim

*Milltex Indus. Corp. v. Jaquard Lace Co.*, 55 F.3d 34 (2d Cir. 1995).................................... 6

*N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013)................................... 40

*Nestor v. Pratt & Whitney*, 466 F.3d 65 (2d Cir. 2006)................................................26, 27

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011)........................................................ 22

*Pac. Union Conf. of Seventh-Day Adventists v. Marshall*, 434 U.S. 1305 (1977)................... 14

*Pharaohs GC, Inc. v. United States SBA*, 990 F.3d 217 (2d Cir. 2021) .............................. 12

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022)........................................................ 18

*Price v. City of Chicago*, 915 F.3d 1107 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 185
(2020) ................................................................................................................... 26

*San Filippo v. United Bro. of Carpenters & Joiners*, 525 F.2d 508 (2d Cir. 1975)................ 15

*Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357 (1997).....................30, 34, 35

*Simon Prop. Grp., L.P. v. mySimon, Inc.*, 282 F.3d 986 (7th Cir. 2002) ............................. 13

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .................................................. 17, 18

*Turco v. City of Englewood*, 935 F.3d 155 (3d Cir. 2019) ....................................................... 26

*Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019) ......................... 19

*U.S. v. Albertini*, 472 U.S. 675 (1985) ................................................................................... 31

*U.S. v. Santiago*, 268 F.3d 151 (2d Cir. 2001) ...................................................................... 26

*United for Peace & Justice v. City of New York*, 323 F.3d 175 (2d Cir. 2003) .................... 28

*United States v. Cambio Exacto, S.A.*, 166 F.3d 522 (2d Cir. 1999) .................................. 16

*United States v. O'Brien*, 391 U.S. 367 (1968) ....................................................................... 30

*United States v. Weslin*, 156 F.3d 292 (2d Cir. 1998), *cert. denied* 525 U.S. 1071 (1999) ... 29

*Vitagliano v. Westchester*, 22-cv-9370 (PMH) (S.D.N.Y.) ........................................... passim

*Volvo N.A. Corp. v. Men's Int'l Prof'l Tennis Council*, 839 F.2d 69 (2d Cir. 1988) ............ 13

*W.N.J. v. Yocom*, 257 F.3d 1171 (10th Cir. 2001) ................................................................. 5

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ........................................................ 31, 36

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) ................................. 38, 40

*Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392 (2d Cir. 2018) ........................... 12

*Whalen v. Roe*, 429 U.S. 589 (1977) .................................................................................. 32, 33

**Statutes**

28 U.S.C. § 1292 ........................................................................................................................ 3

28 U.S.C. § 1331 ........................................................................................................................ 3

42 U.S.C. § 1983 ................................................................................................................... 3, 22

Chapter 425 of the Laws of Westchester County ........................................................ passim

Colo. Rev. Stat. § 18-9-122 ..................................................................................................... 25

Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191 (1996) ................................................................................................ 33

Mass. Gen. Laws. Ch. 266 § 120E1/2(a) (West 2012) .................................... 29

Section 425.21 of the Laws of Westchester County .............................. 4, 25, 29

Section 425.31(i) of the Laws of Westchester County ............................... passim

## Other Authorities

"Promotional Flyer Spring 2023," available at https://perma.cc/H7DC-PK9N ........ 21

40 Days for Life, https://www.40daysforlife.com/en .................................... 21

Clarity Women's Center (emr4motherandchild.org); https://freeabortionalternatives.com/abortion/abortions/Westchester/White_Plains-ny/ ................................................................................................... 26

Justin O'Connor, *Call to action against crisis pregnancy centers caps off summer of abortion-rights protests*, Campus Times (August 30, 2022), https://perma.cc/GF7D-2YUJ ... 26

Poppy Noor, *Pro-choice militants are targeting 'pregnancy crisis centers' across US*, The Guardian, https://perma.cc/L7A2-66KV .................................................. 26

## Rules

Fed. R. App. P. 8 ............................................................................................ 9

Fed. R. Civ. P. 10 ........................................................................................... 5

Fed. R. Civ. P. 17 ........................................................................................... 5

## **PRELIMINARY STATEMENT**

The First Amendment has a long history of allowing reasonable time, place, and manner restrictions, so long as those restrictions serve legitimate and significant governmental interests and do not discriminate based on the message. Here, the County of Westchester ("the County") has enacted a law—Chapter 425 of the Laws of Westchester County—that places restrictions on the place and manner by which people can engage in speech outside of reproductive health care facilities, in order to serve a number of legitimate governmental interests—interests that Appellants do not challenge herein.

The only restriction at issue in this appeal—the creation of a "bubble-" or "buffer-zone"—is modeled directly after a Colorado statute that the Supreme Court upheld in *Hill v. Colorado*, 530 U.S. 703 (2000). Appellants admit that *Hill* is dispositive of their claim, and simply seek to use this Court as a stepping stone on the way to the Supreme Court, where they hope to overturn 23-year-old precedent.

Procedurally, however, Appellants cannot achieve their goal. Appellants appeal solely from the purported denial of a preliminary injunction by the District Court—a denial that has not yet occurred. Further, even if Appellants had an appealable order, they do not have standing to pursue this action. Standing requires more than the mere existence of a law and a desire to violate it. In this pre-enforcement lawsuit, Appellants were required to allege some facts demonstrating a credible threat of enforcement against them. They did not. As such, Appellants' attempt to reach the Supreme Court

1

regarding the validity of *Hill* must fail because they do not meet Article III's requirements for standing.

Moreover, even if the District Court had denied a preliminary injunction, and even if Appellants had standing, the only question before this Court is whether the District Court abused its discretion in such a denial. The answer is clearly no. First, as Appellants have admitted, *Hill* controls and is dispositive. Thus, Appellants were never likely to succeed on the merits. Second, even if *Hill* did not exist, the County's law is constitutional. There can be no question that the County's regulation is content-neutral. While it is limited in application to "protest, education, or counseling," the content of the speech is irrelevant—the counseling could be about abortion, the environment, or any other topic. The limitation—which Appellants claim is content-based—is only on the *place and manner* of speech, not the content. Indeed, if anything, the application to "protest, education, or counseling" makes the law more narrowly tailored.

This bubble zone—which contrary to Appellants' position is *not* a sidewalk counseling ban—strikes a balance between protected First Amendment expression and the rights of individuals to enter reproductive health care facilities safely. It leaves viable methods for Appellants and others to exercise their protected First Amendment rights while promoting the safety and privacy of individuals seeking medical care.

Ultimately, while Appellants may not be able to speak in the exact manner they prefer, the First Amendment does not require that. The County is entitled to create

2

content-neutral, time, place, and manner restrictions, which it has done here. The County's law is constitutional, and therefore the District Court could not have abused its discretion as Appellants have no likelihood of success on the merits.

## STATEMENT OF JURISDICTION

Appellants' underlying complaint contains claims under 42 U.S.C. § 1983, giving the District Court jurisdiction under 28 U.S.C. § 1331. This Court does not have jurisdiction over the District Court's decision not to bifurcate Appellants' motion for a preliminary injunction, which remains pending before the District Court. *See* 28 U.S.C. § 1292.

## STATEMENT OF THE ISSUES

I. Whether Appellants have an appealable order where the District Court only deferred determination of a single aspect of Appellants' broader request for injunctive relief, so it could consider Appellants' request for an injunction as to all the challenged provisions of Chapter 425 together, and where the District Court did not actually decide the preliminary injunction motion?

II. Whether the District Court abused its discretion in not granting an injunction where Appellants do not have standing to challenge Chapter 425?

III. Whether the District Court abused its discretion in not granting an injunction where Appellants have no likelihood of succeeding on the merits of their claim?

3

## STATEMENT OF FACTS

**1. Chapter 425**

On June 27, 2022, the County enacted Chapter 425 of the Laws of Westchester County ("Chapter 425"). Section 425.31(i), the provision at issue in this appeal,[1] provides that:

It shall be unlawful for any person to do the following:

. . .

i. knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way within a radius of one-hundred (100) feet from any door to a reproductive health care facility.

(A211).

Chapter 425 defines reproductive health care facilities to mean "any building, structure, or place, or any portion thereof, at which licensed, certified, or otherwise legally authorized persons provide reproductive health care services." Chapter 425 § 425.21(k) (A210). In turn, reproductive health care services are defined as "medical, surgical, counseling, or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." Chapter 425.21(l) (A210).

---

[1] Appellants have challenged a number of the provisions of Chapter 425, but those challenges remain with the District Court.

## 2. Procedural History

On August 15, 2022, two anonymous plaintiffs commenced the underlying action, challenging numerous provisions of Chapter 425 including Section 425.31(i). Because plaintiffs had neither sought nor obtained leave from the Court to commence the action under pseudonyms, however, no summonses were issued. (A1-A6). On August 27, 2022, having been informed more than a week earlier that plaintiffs needed to seek permission to file under pseudonyms, plaintiffs filed pre-motion letters seeking to proceed under pseudonym and file a motion for a preliminary injunction ("PI"). (A6, A19-A20). The County appeared for the limited purpose of opposing the motions— the pseudonyms on the merits and the PI on the grounds that it was premature as the County had not yet been served. (A24-A26).

On September 15, 2022, the District Court (Halpern, J.) granted leave to serve and file a motion to proceed under pseudonyms, and set a briefing schedule for any oppositions and a reply thereto. (A34-A35). The Court also denied the PI motion request as premature, given that the Court had yet to determine if plaintiffs could proceed under pseudonyms.[2] (*Id.*).

---

[2] In their brief, Appellants alternately categorize this as delay caused by either the Clerk of the District Court or the District Court itself. (App. Br. at 24). That is a gross mischaracterization. By *rule* plaintiffs to an action must be named. Fed. R. Civ. P. 10(a); 17(a). As such, "[w]hen a party wishes to file a case anonymously or under a pseudonym, it must first petition the district court for permission to do so. . . . Where no permission is granted, the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (quotation marks and citation omitted). Given that pseudonyms are a "threshold question"

On September 30, 2022, plaintiffs filed their motion; pursuant to the September 15th scheduling order, the County filed an opposition on October 14, 2022, and plaintiffs filed a reply on October 21, 2022. (A9-A10). As such, the motion for pseudonym relief was not fully submitted to the District Court until October 21, 2022.

Separately, on November 1, 2022, a named individual filed a related case, challenging only Section 425.31(i). That case was then assigned to the same judge. *Vitagliano v. Westchester*, 22-cv-9370 (PMH) (S.D.N.Y.) ("*Vitagliano*").

While the motion for pseudonym relief was pending, on November 23, 2022, plaintiffs amended the complaint to add Appellants 40 Days for Life and White Plains 40 Days for Life. (A11). Even though there were now two named parties, Appellants did not seek to renew their request for a PI at that juncture.

On December 15, 2022, less than two months after the motion to proceed under pseudonyms was fully submitted, plaintiffs sought to amend the complaint again—this time to drop the pseudonyms, name one of the original plaintiffs, and add a new named plaintiff in place of one of the original anonymous plaintiffs. (A53-A56). The Court

---

for jurisdictional purposes, the Clerk appropriately found that the request for summonses was not properly complete, and the District Court appropriately determined that was the first issue that had to be decided. *Doe v. N.Y. State Dep't of Health*, 20-cv-4817 (GHW), 2020 U.S. Dist. LEXIS 170560, at *1 (S.D.N.Y. Sep. 17, 2020). Appellants' reliance on *Milltex Indus. Corp. v. Jaquard Lace Co.*, 55 F.3d 34, 39 (2d Cir. 1995) (*see* App. Br. at 43) is misplaced, as Appellants did not attempt to file a motion for a PI following the denial of the pre-motion conference request.

granted permission and rendered the motion to proceed under pseudonyms moot. (A57).

On December 16, 2022, the County filed a pre-motion letter in the *Vitagliano* case, seeking to dismiss the action. (A36). On December 20, 2022, Appellants filed the second amended complaint ("SAC") in this action. (A59-A329). On December 21, 2022, plaintiff in the *Vitagliano* case conceded that her lawsuit was ripe for dismissal, because Section 425.31(i) is constitutional under the Supreme Court's decision in *Hill*. (A39). On December 22, 2022, Appellants in this action filed a letter seeking to have their challenge to Section 425.31(i) treated the same as in *Vitagliano*, admitting that "the Court is bound by *Hill* and Plaintiffs' good faith argument for a modification of controlling law must abide the Supreme Court's reconsideration of *Hill*." (A330). On December 23, 2022, the District Court denied Appellants' request, subject to renewal once the County filed a response to the SAC. (*Id.*).

On December 30, 2022, more than a month after Appellants had joined named parties, and ten days after filing the SAC, Appellants filed a letter seeking to renew their request for a PI. (A332). In this letter, Appellants stated that the District Court should preliminarily enjoin the provisions of Chapter 425 *other than* Section 425.31(i), again effectively conceding that the District Court was bound by *Hill*. (A335).

On January 3, 2023, the District Court dismissed the *Vitagliano* action finding, *inter alia*, that *Hill* is controlling law. Plaintiff in that action timely appealed. (*See* 2d Cir.

Index No. 23-30). On January 9, 2023, the County filed its opposition letter to Appellants' PI request. (A338). On January 10, 2023, the District Court set a pre-motion conference for January 18, 2023.[3] (A343).

At the January 18, 2023 conference, Appellants sought to have their PI motion summarily denied with respect to Section 425.31(i), in order to quickly appeal. The District Court stated that "plaintiff has a proposal, an idea with respect to the *Vitagliano* ruling that would be applicable here," in order to "advance the ball in the Second Circuit." (SPA13-14). The District Court further explained, "I'm certainly happy to look at whatever you suggest. I'm not committing to a course of conduct." (SPA13). The District Court then set a briefing schedule for the PI motion.[4]

---

[3] In an attempt to portray the District Court as somehow dilatory, Appellants assert that the court "delayed that conference [for leave to file their PI motion] for nearly three weeks." (App. Br. at 43). However, Appellants fail (again) to acknowledge their part in any purported delay. Judge Halpern, as many District Court Judges, requires pre-motion conferences, and provides an opportunity to respond to a letter requesting such a conference within 5 business days. Appellants chose to file their request on the Friday before a holiday weekend, giving the County until January 9th to file an opposition. The very next day, the District Court granted a conference, and scheduled it for a week later, which is eminently reasonable timing. If Appellants had a true sense of urgency regarding the PI, they could have filed a pre-motion letter as early as November 23, 2022, and certainly at the time they filed the SAC on December 20, 2022. That they chose to delay until the end of the day on December 30th to file their pre-motion letter inures against them, not the District Court.

[4] Notably, despite Appellants' concern about the February 22, 2023 date, they asked for a reply date of March 1, 2023—two weeks after the County's opposition was due. (SPA15). Further, Appellants were not prepared to serve their motion by the date of the conference— weeks after requesting it—and ultimately needed two more weeks to even submit their papers. (S.D.N.Y. ECF No. 63). Had Appellants expressed a real sense of urgency, they could have been ready to serve their papers on the conference date and given the District Court an opportunity to consider their PI motion before the date they claimed they needed relief.

On January 19, 2023, Appellants filed a proposed order on the PI for Section 425.31(i). (A349). On January 25, 2023, the District Court denied that application, stating that:

> The Court finds no basis in law to bifurcate the motion for preliminary injunction as Plaintiffs request. The Court will consider Plaintiffs' request for preliminary injunctive relief as to all of the challenged provisions of Section 425.31 once the motion is sub judice.

(SPA25). More than a week later, on February 3, 2023, Appellants appealed from this denial. (A352) On February 10, 2023—over two weeks after the District Court's order—Appellants filed a motion for an injunction pending appeal with this Court, still claiming an emergency that required the granting of an injunction by February 22, 2023. (2d Cir. ECF No. 14). On February 22, 2023, a panel of this Court denied Appellants' injunction request, finding that Appellant failed to comply with Federal Rule of Appellate Procedure 8(a)(2)(A) and failed to meet the standard for an injunction pending appeal. (2d Cir. ECF No. 55). This Court granted Appellants' request for an expedited briefing schedule and ordered that this appeal be heard in tandem with the appeal in *Vitagliano*. *Id.*

### 3. Summary of Appellants' Allegations Relating to Standing

The SAC, with respect to standing, asserts the following:

- 40 Days For Life ("40DFL") is an international organization that promotes local anti-abortion vigils, and provides training, signage, and literature to local vigils.

9

40DFL does not actually run the local vigils; those are done by local organizations. 40DFL claims organizational standing. (A63-A64)

- White Plains 40 Days For Life ("WP40") is an unincorporated association that organizes local vigils in Westchester County. WP40 claims associational standing. (A64-A65).

- Hulinsky is a sidewalk counselor and protestor who, prior to the enactment of Chapter 425, would pray outside of a Planned Parenthood in New Rochelle, and would approach people seeking to enter the Planned Parenthood to have a discussion of abortion alternatives and pass literature. Since the enactment of Chapter 425, Hulinsky has voluntarily ceased her counseling activities. (A65-A67). Hulinsky does not allege that she was threatened with enforcement of Chapter 425.

- Molinelli is a sidewalk counselor and protestor who, prior to the enactment of Chapter 425, would pray outside of a Planned Parenthood in Greenburgh, and would approach people seeking to enter the Planned Parenthood to have a discussion of abortion alternatives and pass literature and "blessing bags" that contain other items. Since the enactment of Chapter 425, Molinelli has voluntarily ceased her counseling activities. (A67-A70). Molinelli does not allege that she was threatened with enforcement of Chapter 425.

## **SUMMARY OF ARGUMENT**

Appellants do not have an appealable order to bring before this Court. The District Court, while indicating how it expected to rule on Appellants' anticipated PI motion, only deferred determination of Appellants' requested PI until consideration of the entire request. Given that the District Court has yet to rule on the PI motion, there is no appealable order and this appeal should be dismissed.

Further, Appellants lack standing to pursue this action. Standing requires Appellants to show a credible threat of enforcement, which requires more than simply the existence of a law. Appellants have not shown, or alleged, any facts to support a credible threat—indeed, Appellants assert solely that they (or people adjacent to their organization) want to take actions that they believe would contravene the law. That is not enough to establish standing. As Appellants have not established standing, there is no reason to reach the merits of the appeal.

If the Court does reach the merits of the alleged denial of Appellants' PI motion, there is no real dispute to resolve. The only question before this Court is whether the District Court abused its discretion. However, given that Appellants concede that *Hill v. Colorado* controls, there is no likelihood of success on the merits: assuming the District Court denied Appellants' PI motion, it was well within its discretion to do so, because *Hill* compels the denial of Appellants' request to enjoin 425.31(i). And regardless of *Hill*, the County's law is a content-neutral, time, place, and manner restriction that clearly passes intermediate scrutiny. Section 425.31(i) only restricts the place and

11

manner in which a message can be communicated, without regulating the content of

the communication. Further, the County has valid (and unchallenged) governmental

interests that are served by the County's buffer zone. This buffer zone is narrowly

tailored to protect interests in, *inter alia*, the free-flow of traffic, the ability to access

reproductive health care facilities, and to protect the privacy of individuals seeking

medical care. It further leaves open ample alternative channels for communication, as

it permits expressive activity by Appellants and others in close proximity to their

intended audience. As such, Appellants have no likelihood of success and the District

Court did not abuse its discretion.

## STANDARD OF REVIEW

This Court reviews questions of standing under Article III *de novo. Field Day, LLC*

*v. County of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006). Whether Appellants have an

appealable order is a question of law, and therefore also subject to *de novo* review. *See*

*Jaen v. Sessions*, 899 F.3d 182, 185 (2d Cir. 2018). The denial of a preliminary injunction

is reviewed for an abuse of discretion. *Pharaohs GC, Inc. v. United States SBA*, 990 F.3d

217, 225 (2d Cir. 2021). This Court may "affirm on any ground that finds support in

the record, even if it was not the ground upon which the trial court relied." *Wells Fargo*

*Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) (citation omitted).

## ARGUMENT

### I. The Instant Appeal Should Be Dismissed

The District Court's order (SPA25) is not appealable, as it did not deny injunctive relief, *nor* was it an effective denial. All the order did was explain that the District Court would consider all elements of the PI motion at the same time. Further, because Appellants chose to disregard the District Court's direction regarding the PI motion, they have violated the policy against piecemeal appeals.

#### A. The Order is Not Appealable

Delaying the adjudication of the PI motion with respect to Section 425.31(i) does "not substantively deny the request for an injunction" and therefore is not appealable as of right. *Defense Distributed v. AG N.J.*, 972 F.3d 193, 199 (3d Cir. 2020); *accord Simon Prop. Grp., L.P. v. mySimon, Inc.*, 282 F.3d 986, 990 (7th Cir. 2002) ("We distinguish between merely postponing relief and denying a request for an injunction."). Further, Appellants' reliance on *Volvo N.A. Corp. v. Men's Int'l Prof'l Tennis Council*, 839 F.2d 69 (2d Cir. 1988) to establish appealability is misplaced. *Volvo* recognized that a limited exception for interlocutory appeals exists where the order effectively disposed of a request for injunctive relief, *with prejudice. Id.* at 75-76. Indeed, in *Volvo*—which involved a motion to dismiss—where certain claims were dismissed with leave to replead, there was no appellate jurisdiction to consider the effective denial of injunctive relief with respect to those claims. *Id.* Here, there was no final disposition with respect to *any*

13

request by Appellants for injunctive relief; the District Court simply denied Appellants' request to consider one portion of their motion in advance of the other portions.

Until such time as the District Court rules on Appellants' motion for a PI, there is not an appealable order. Thus, the instant appeal should be dismissed.

### B. The Instant Appeal Violates the Policy Against Piecemeal Appeals

"The policy against piecemeal interlocutory review other than as provided for by statutorily authorized appeals is a strong one." *Pac. Union Conf. of Seventh-Day Adventists v. Marshall*, 434 U.S. 1305, 1309 (1977). This appeal clearly violates that policy. Appellants argue that the Court's consideration of the "discrete" nature of their appeal now would actually *avoid* piecemeal litigation. (App. Br. at 45). This is wrong.

First, that the instant appeal involves a discrete issue is the very definition of piecemeal review. Pending before the District Court is Appellants' PI motion with respect to nearly every other aspect of Chapter 425, including Appellants' request to enjoin the law in its entirety. If their PI motion before the District Court is denied, Appellants may seek review of that denial, leading to two separate appeals relating to their initial (single) underlying request for a PI—in other words, the very piecemeal litigation they claim to avoid. Indeed, allowing an appeal from each "discrete" issue involved in a litigation would exponentially increase the number of appeals, and increase the risk of obtaining inconsistent outcomes regarding different provisions of the same law.

14

Second, Appellants argue that their appeal avoids piecemeal litigation because it will be heard with the *Vitagliano* appeal. But this assertion ignores the stark procedural differences between the two cases. At most, Appellants in this appeal can challenge the denial of a PI with respect to Section 425.31(i). There has been no final determination as to the constitutionality of that section in the *Hulinsky* action. By contrast, the issue before this Court in *Vitagliano* is the ultimate question of Section 425.31(i)'s constitutionality on the merits, following the District Court's dismissal of the lawsuit with prejudice.[5]

Appellants' reliance on *San Filippo v. United Bro. of Carpenters & Joiners*, 525 F.2d 508 (2d Cir. 1975) does not help them. In *San Filippo*, this Court considered a valid appeal from the denial of a PI. After rendering its determination on that issue, the Court took the opportunity to consider the denial of a motion to dismiss *between the same parties*. *Id.* at 512-13. That is inapplicable to the instant situation, where Appellants seek to link their (purported) denial of a PI with the granting of a motion to dismiss in a separate action.

For the foregoing reasons, the instant appeal results in piecemeal litigation and should be dismissed.

---

[5] To the extent Appellants are concerned that "their rights will be decided in the *Vitagliano* appeal without their participation" (App. Br. at 36), the remedy is not to permit the instant appeal. The remedy would be for Appellants to either seek to intervene in the *Vitagliano* appeal or to file an *amicus* brief in that matter.

15

## II. Appellants Lack Standing[6]

"Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (quotation marks and citations omitted). Further, because a determination that Appellants do not have standing would dispose of this appeal, this Court should decide standing before reaching the merits of the appeal. *Bond v. United States*, 572 U.S. 844, 855 (2014).

### A. The Individual Appellants Have Not Established Standing

In order to adequately plead standing, the Individual Appellants were required to demonstrate an injury in fact, by alleging (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest" (2) that their "intended future conduct is 'arguably proscribed by [the] statute'" they challenged; and (3) that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573

---

[6] Appellants contend that the County has not "disputed Hulinksy and Molinelli's standing to challenge the Bubble Zone." (App. Br. at 46 n.9). This is at best misleading. The County disputed each Appellant's standing to sue in its opposition to the PI motion, which is currently pending before the District Court. (*See* S.D.N.Y. ECF No. 81 at 4). Although the County's standing arguments in opposition to the pending motion are not directly related to the bubble-zone provision (they regard Plaintiffs' challenge to Chapter 425 in its entirety), this is only because Appellants chose to file this (improper) appeal before the County had the opportunity to brief any issues regarding Section 425.31(i) and Appellants. Regardless, because a plaintiff's standing implicates this Court's ability to hear the case, standing may be raised at any point in the litigation or on appeal, even where it was not addressed by the district court. *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (noting that standing may be raised "for the first time on appeal").

U.S. 149, 159-62 (2014) (alteration in original) (quoting *Babbit v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979)).

As this Court has made clear, however, a "credible threat is not established by 'imaginary or speculative' fears of prosecution," and requires something more concrete. *Adam v. Barr*, 792 F. App'x 20, 22 (2d Cir. 2019), *cert. denied* 140 S. Ct. 1119 (2020) (quoting *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015)).

> Although "courts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund,'" *Cayuga Nation* [*v. Tanner*], 824 F.3d at 331 (quoting *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013)), the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing, *see Knife Rights*, 802 F.3d at 384 ("The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue.").

*Id.*

Here, neither Individual Appellant has identified a credible threat of enforcement, outside of the general existence of the law. In *Adam*, this Court found the appellant lacked standing on the grounds that the presumption that a law would be enforced was insufficient. *Id.* at 23. This Court then provided specific examples of cases where the credible threat was sufficiently addressed:

> For example, in *Cayuga Nation*, we found that the plaintiffs had alleged a credible threat of prosecution not only because their behavior was clearly prohibited by an ordinance, but also because the town "announced its intention to enforce the Ordinance" against the plaintiffs and warned the plaintiffs that failure to comply might constitute an offense punishable by fine, imprisonment, or both. 824 F.3d at 331; *see also Susan B. Anthony List*, 573 U.S. at 164 (discussing history of past enforcement of a statute against

17

the petitioners, for the same conduct, as being good evidence that "the threat of enforcement is not 'chimerical'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974))); *Knife Rights*, 802 F.3d at 385-87 (fear of prosecution not conjectural or hypothetical "given that defendant [district attorney] recently identified [plaintiff] as a [state criminal law] violator and pursued enforcement action against it").

*Id.* (alterations in original); *accord Picard v. Magliano*, 42 F.4th 89, 100 (2d Cir. 2022) ("Indeed, perhaps the most significant piece of evidence in Picard's favor — and what makes Picard's case stand out from other pre-enforcement challenges — is that he has already been arrested for his jury nullification advocacy prior to initiating this lawsuit.").

In *Susan B. Anthony List*, the Supreme Court only found standing after examining the facts relating to future enforcement. There, a substantial risk of future enforcement existed based on, *inter alia*, allegations that (1) there had been prior enforcement against the petitioner; (2) the enforcement agency handled 20 to 80 claims a year under the at-issue statute; and (3) the owner of a billboard on which the petitioner wanted to display a message refused after receiving a letter threatening enforcement. 573 U.S. at 164-65;[7] *accord*, *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (standing where the individual plaintiffs alleged that they intended to engage in the proscribed activity "and the Village has announced its intention to enforce the Ordinance against" them); *Tweed-*

---

[7] While the Supreme Court found that these allegations constituted a credible threat of enforcement, it did "not decide whether that threat standing alone gives rise to an Article III injury," instead relying on that threat combined with the possibility of criminal prosecution to impart standing. 573 U.S. at 166. As there is the potential for criminal prosecution under Chapter 425, the focus herein is on the first part of the inquiry—whether a credible threat has been sufficiently alleged.

*New Haven Airport Authority v. Tong*, 930 F.3d 65, 69-70 (2d Cir. 2019) (the statute in question it explicitly prohibited the extension of a specific runway at Tweed. "Where as here, the plaintiff is himself an object of the action (or forgone action) at issue . . . there is ordinarily little question that the action or inaction has caused him injury.") (quotation marks and citation omitted; ellipses in original); *Knife Rights*, 802 F.3d at 385 (plaintiff had previously been "officially charged, paid fines, surrendered property in purported violation of law, implemented a prosecution-approved compliance program, and entered into a deferred prosecution agreement that expressly threatened future charges").

These cases are far cries from Appellants' allegations. Here, at most, Appellants assert that they intend to engage in actions they previously engaged in, and are concerned that they will be subject to enforcement—despite no allegations that there has ever been enforcement or threats of enforcement. Given that "the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing" (*Adam*, 792 F. App'x at 22), the Individual Appellants have failed to establish standing.

## B. The Organizational Appellants Lack Standing

Neither 40DFL or WP40 sufficiently pleaded direct organizational standing. It is the organizations' burden to satisfy the "irreducible constitutional minimum of standing" by showing: "(i) an imminent injury in fact to itself as an organization (rather

than to its members) that is distinct and palpable; (ii) that its injury is fairly traceable to [the challenged act]; and (iii) that a favorable decision would redress its injuries." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172-73 (2d Cir. 2021). "An organization can satisfy the injury prong if it shows that the challenged action did not merely harm its 'abstract social interests' but 'perceptibly impaired' its activities." *Id.* at 173. However, "where, as here, an organization is not directly regulated by a challenged law or regulation, it cannot establish 'perceptible impairment' absent an *involuntary material burden* on its established core activities." *Id.* (emphasis added). In such a circumstance, "the challenged law . . . must impose a cost (e.g., in time, money, or danger) that adversely affects one of the activities the organization regularly conducted (prior to the challenged act) in pursuit of its organizational mission." *Id.* at 173-74.

According to the operative complaint, 40DFL is an "international pro-life advocacy organization whose activities include the promotion of 40-day Local Vigils on public sidewalks or in public-rights-of way adjacent to abortion facilities throughout the nation, including the Planned Parenthood facility in Greenburgh, NY." (A63). 40DFL has no members, and "[a]ll Local Vigils and associated activities are independent from 40DFL, which neither directs nor leads any Local Vigils." (*Id.*). 40DFL argues that Chapter 425 was designed to impede 40DFL's promotion of local vigils at the Planned Parenthood in Greenburgh. (App. Br. at 3-4).

20

It is clear—even from the SAC—that the 40DFL vigils continue to be promoted and attended, including in Westchester County, since the enactment of Chapter 425. (A329); 40 Days for Life, https://www.40daysforlife.com/en (promoting vigil from February 22 to April 2); "Promotional Flyer Spring 2023," available at https://perma.cc/H7DC-PK9N.

Further, the "costs" 40DFL claims do not arise from the sort of "involuntary material burden on its established core activities" necessary to give it standing. *Russell-Tucker*, 8 F.4th at 173-74. 40DFL's claims that it has essentially engaged legal counsel for the purposes of this voluntary litigation (A91) are insufficient to confer standing. Nor does 40DFL allege that it frequently participates in litigation as part of its mission. *Russell-Tucker*, 8 F.4th at 174 ("[A]n organization's decision to embark on categorically new activities in response to action by a putative defendant will not ordinarily suffice to show an injury for standing purposes."). Under 40DFL's theory, "an organization could establish standing by claiming to have been injured by any law or regulation touching any issue within the scope of its mission (which the organization itself can define) so long as it expends resources to oppose that law or regulation." *Id.* at 173. But this Court expressly "reject[ed] such an expansive concept of organizational injury for standing purposes" (*id.*), and 40DFL does not have standing to sue.

Nor does WP40 have organizational standing. WP40 "is an unincorporated association of pro-life advocates and a Local Vigil . . . that engages in 40-day vigils and

peaceful activism, including the offering of pro-life literature and sidewalk outreach, on the sidewalks and rights-of-way adjacent to the aforementioned Planned Parenthood facility in Greenburgh, NY." (A62). Under Chapter 425, WP40 can continue to engage in its core activities without restriction. *See Apt. Owners Advisory Council v. Marks*, No. 21 CV 10175 (VB), 2022 U.S. Dist. LEXIS 169873, at *11-13 (S.D.N.Y. Sept. 20, 2022) (lack of standing where plaintiffs "engaged in more of the same work as a result of [the challenged policies]"). Since WP40 has not demonstrated that its core mission is frustrated, it lacks organizational standing to seek a preliminary injunction.

Finally, WP40 does not have associational or representational standing. It has long been the law in this Circuit that an entity may *not* assert the rights of its members in a 42 U.S.C. § 1983 case in order to establish standing. *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011); *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973). All the claims in this lawsuit are brought under Section 1983. (A120, A130, A132). And in any event, none of the members, as alleged, faces a credible threat of prosecution. *See* Point II(A), *supra*. Therefore, no Appellant has standing.

## C. This Court Should Not Reach the Merits

"[I]t is 'a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.'" *Bond*, 572 U.S. at 855 (quoting *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (*per curiam*)). As Justice Brandeis

22

noted, "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter." *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J. concurring).

As set forth above, Appellants have not established standing (or appealability), either of which is a sufficient basis to dispose of this appeal. The merits of the instant appeal require constitutional analysis, and thus this Court may resolve on standing or appealability, and need not reach the merits of Appellants' claims.

## III. The District Court Did Not Abuse Its Discretion

Turning to the merits, Appellants cannot show that the District Court abused its discretion in refusing to bifurcate the PI motion, or in effectively denying it[8] with respect to Section 425.31(i). An abuse of discretion occurs only if the District Court: (1) based its decision on an error of law; (2) relied on a clearly erroneous factual finding; or (3) rendered a decision outside the range of permissible decisions. *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015).

### A. Appellants Cannot Succeed On the Merits

If this Court were to reach the merits, it should affirm the District Court. It is *undisputed* that, under binding Supreme Court precedent, Section 425.31(i) is

---

[8] The County does not concede that this was an effect of the District Court's order, but it assumes so for the purpose of discussing Appellants' likelihood of success on the merits.

23

constitutional. Thus, the District Court should be affirmed as Appellants are not likely to succeed on the merits of their claim.

> *i. There Is No Dispute That Hill Is Binding*

It is undisputed (and indisputable) that the Supreme Court's decision in *Hill* controls, and that under *Hill*, the County's law is constitutional. Indeed, Appellants state as much in their brief:

- "Plaintiffs here filed a letter . . . conceding that *Hill* controls as to their Bubble Zone Claim." (p. 27);
- "Plaintiffs' challenge to the Bubble Zone hinges discretely and entirely on the holding in *Hill* which still 'directly controls'" (p. 44) (citation omitted).

As there is no dispute that *Hill* controls, Appellants were unlikely to succeed on the merits, and they cannot show the District Court abused its discretion. Therefore, this Court should affirm the District Court.

> *ii. Even if a Dispute Existed, Hill Controls*

Appellants seek to enjoin Section 425.31(i). That section makes it unlawful to:

knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public right of way within a radius of one-hundred (100) feet from any door to a reproductive health care facility.

(A211). This provision is modeled precisely after the Colorado law at issue in *Hill*. That law provides:

> No person shall knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health-care facility.

Colo. Rev. Stat. § 18-9-122(3) (1999); *Hill*, 530 U.S. at 707, n.1. In other words, the only differences between Section 425.31(i) and the law upheld in *Hill* are that Section 425.31(i) relates to passing "any material" instead of just "leaflet[s] or handbill[s]," and that it only applies to reproductive health care facilities instead of all health-care facilities. The Supreme Court expressly held in *Hill* that the Colorado statute at issue was both "content neutral" and "narrowly tailored," and the same result must necessarily follow here. 530 U.S. at 723, 725.

Indeed, arguably Section 425.31(i) is *more* narrowly tailored than the Colorado statute, as it only applies outside facilities that offer reproductive health care, as opposed to the much broader place restrictions in the Colorado statute. Further, Section 425.31(i) is *more* content-neutral than the Colorado statute, as it applies to both pro-choice facilities and anti-abortion pregnancy crisis centers. *Compare* Section 425.21(k)-(l) (includes facilities that make referrals or counsel with respect to reproductive health) *with* Colo. Rev. Stat. § 18-9-122(4) (only applying to facilities licensed to provide medical treatment). Thus, Section 425.31(i) protects both sides of the debate—applying at

facilities such as Planned Parenthood *and* pregnancy crisis centers that have been subject to protests by pro-choice advocates.[9]

*Hill* has been applied as controlling law by numerous Circuit Courts of Appeals over the last several years. *See March v. Mills*, 867 F.3d 46, 64 (1st Cir. 2017); *Turco v. City of Englewood*, 935 F.3d 155, 165-67 (3d Cir. 2019); *Price v. City of Chicago*, 915 F.3d 1107, 1119 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 185 (2020); *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 403-04 (D.C. Cir. 2017). Indeed, in *Bruni v. City of Pittsburgh*, Justice Thomas, in concurring with the denial of certiorari, acknowledged that the Supreme Court has not overruled *Hill*. 141 S. Ct. 578 (Statement of Thomas, J.).

As this Court has expressly stated:

"It is not within our purview to anticipate whether the Supreme Court may one day overrule its existing precedent. 'If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.'"

*Nestor v. Pratt & Whitney*, 466 F.3d 65, 72 n.8 (2d Cir. 2006) (quoting *U.S. v. Santiago*, 268 F.3d 151, 155 n.6 (2d Cir. 2001) (alterations in the original)).

---

[9] *See, e.g.*, Poppy Noor, *Pro-choice militants are targeting 'pregnancy crisis centers' across US*, The Guardian, https://perma.cc/L7A2-66KV; Justin O'Connor, *Call to action against crisis pregnancy centers caps off summer of abortion-rights protests*, Campus Times (August 30, 2022), https://perma.cc/GF7D-2YUJ. There are pregnancy crisis centers in Westchester, which Chapter 425 protects. *See, e.g.*, Clarity Women's Center (emr4motherandchild.org); https://freeabortionalternatives.com/abortion/abortions/Westchester/White_Plains-ny/.

Given that *Hill* remains binding Supreme Court precedent, and Section 425.31(i) essentially mirrors the law upheld by *Hill*, Section 425.31(i) is constitutional. Appellants are thus unlikely to succeed on the merits of their claim, and the District Court should be affirmed.[10]

### iii. Section 425.31(i) Passes Intermediate Scrutiny

Even if *Hill* did not control—or even apply—Section 425.31(i) is a valid, content-neutral time, place, and manner restriction that is traditionally permitted under the First Amendment. There is no dispute that the County law regulates speech in a traditional public forum. Thus, the question as to what level of scrutiny applies turns on whether the regulation is content-neutral. Where a regulation is content-neutral, intermediate scrutiny applies, and the regulation must be "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quotation marks and citation omitted).

### a. Section 425.31(i) Is Content Neutral

Section 425.31(i) is content-neutral. Any argument that the section's reference to "protest, education, or counseling" makes it content-based is wrong. While Section 425.31(i) makes reference to these *types* or *manners* of speech, it does so irrespective of the speaker's message, and plainly does not prohibit speech of any particular content.

---

[10] To the extent Appellants argue that a PI should be issued in anticipation of a decision by the Supreme Court on the continued viability of *Hill*, such a position has been expressly rejected by this Court in *Nestor*. 466 F.3d at 72 n.8.

27

The Supreme Court's "First Amendment precedents and doctrines have consistently recognized that restrictions on speech may require some evaluation of the speech"— here, whether the speech falls under any of the express manner-of-speech categories— "and nonetheless remain content neutral." *City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S. Ct. 1464, 1473 (2022). Thus, while an individual can approach within 8 feet of another person to ask it is supposed to rain later (*see* App. Br. at 2), they *cannot* approach within 8 feet (without that person's consent) to educate the person about the impact of climate change on weather patterns.

Restrictions based on the activity, and not the content of the speech, are typical content-neutral restrictions that this Court has routinely upheld. *See, e.g., Hous. Works v. Kerik*, 283 F.3d 471, 474-75 (2d Cir. 2002) (discussing content-neutral permit scheme for steps of city hall, where permits were required for demonstrations, picketing, vigils, and similar conduct, but not for certain types of ceremonies); *United for Peace & Justice v. City of New York*, 323 F.3d 175, 177 (2d Cir. 2003) (prohibiting a moving protest while allowing cultural parades content-neutral). In *Marcavage v. City of New York*, this Court found a regulation to be content-neutral that prohibited all demonstrations within a designated area during the Republican National Convention. 689 F.3d 98, 104 (2d Cir. 2012), *cert. denied*, 568 U.S. 1212 (2013). In so holding, this Court noted that the "restriction on expressive activity was not aimed at the content of the message; no demonstrating of any kind was allowed in that zone." *Id.* Thus, while the *method* of

28

speech (demonstration) was prohibited, the actual message was not being regulated. The same applies here.

Nor is it relevant that the prohibition is limited to a defined area outside of reproductive healthcare facilities. "It is true, of course, that by limiting the buffer zones to [reproductive healthcare] clinics, the Act has the inevitable effect of restricting abortion-related speech more than speech on other subjects. But a facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics." *McCullen*, 573 U.S. at 480 (quotation marks and citation omitted); *accord*, *United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998), *cert. denied* 525 U.S. 1071 (1999) ("It is irrelevant whether, in practice, most of those prosecuted under FACE are anti-abortion protestors. First Amendment law does not recognize disparate impact claims. And a group cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group.") (quotation marks and citations omitted; alterations accepted).

In fact, in *McCullen*, the law at issue applied only to facilities where abortions were performed. 573 U.S. at 471 (reproductive health care facility defined to be a place "where abortions are offered or performed.") (quoting Mass. Gen. Laws. Ch. 266 § 120E1/2(a) (West 2012)). As mentioned, the County's law regards any "medical, surgical, counseling, or referral services relating to the human reproductive system, including pregnancy or the termination of a pregnancy." Chapter 425.21(l) (A210).

Thus, Section 425.31(i) also applies outside of pregnancy crisis centers. This further evidences the County law's content neutrality: Section 425.31(i) does not favor any position in a reproductive healthcare (or any) debate. *See McCullen*, 573 U.S. at 482-83.

As such, Section 425.31(i) is content neutral, and intermediate scrutiny applies. *Id.* at 477.

### b. Section 425.31(i) Serves a Significant Governmental Interest

In enacting Chapter 425, the County found that there were a number of governmental interests served by this law. Those interests were to:

> protect and promote the public health, safety, and welfare; ensure order; protect the freedom of access to reproductive health care facilities; protect the freedom to obtain reproductive health care services; promote the free flow of traffic in the public way; advance medical privacy and the well-being of patients seeking access to reproductive health care facilities and obtaining reproductive health care services; and safeguard private property.

(A208). These interests have already, and repeatedly, been found significant by the Supreme Court. *McCullen*, 573 U.S. at 486-87 (citing *Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357 (1997) and *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 767-68 (1994)). Appellants do not appear to challenge these well-established interests.[11]

---

[11] Rather than addressing the actual interests identified in the law, Appellants instead attempt to cherry-pick interests taken out-of-context from the legislative record. However, "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *United States v. O'Brien*, 391 U.S. 367, 384 (1968).

*c. Section 425.31(i) Is Narrowly Tailored*

Given that Section 425.31(i) is content-neutral, it only needs to be narrowly tailored to serve the governmental interests identified above. *McCullen*, 573 U.S. at 486.

> For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests. Such a regulation, unlike a content-based restriction of speech, need not be the least restrictive or least intrusive means of serving the government's interests. But the government still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.

*Id.* (quotation marks and citations omitted). Thus, "narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quoting *U.S. v. Albertini*, 472 U.S. 675, 689 (1985)).

There can be no dispute "that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 647 (1981). While the County's law does not allow Appellants the unfettered discretion to communicate their views as they might desire, it certainly allows their protected expression. Appellants may stand anywhere in the public right-of-way to provide counseling or display signs. Appellants may "attempt to offer literature as drivers turn into the parking lots" (*McCullen*, 573 U.S. at 488), and may hold out leaflets to anyone approaching them.

31

The County's bubble zone under Section 425.31(i) is narrowly tailored to support the County's interests. As noted, among the County's interests are to: (1) protect the freedom of individuals to obtain reproductive health care services; (2) promote the free flow of traffic in the public way; and (3) advance medical privacy and the well-being of patients who seek access to reproductive health care facilities and reproductive health care services. However, if individuals can be swarmed by protestors on their way to any reproductive health care facility,[12] those interests may be impaired. First, the free flow of traffic on a sidewalk may be impaired if protestors are allowed to approach and surround an individual seeking access to a facility. Second, it may make it more difficult for the individual to actually enter a facility, if they need to try to evade a protestor or counselor. While it is likely Appellants will argue that they do not intend to surround an individual as part of a group of counselors or protestors, narrow tailoring does not mean that the County must tailor a law to each individual's intended activities, only that it must protect the government's interests while not overly burdening speech. "The justification for the [law] should not be measured by the disorder that would result from granting an exemption solely to" Appellants. *Heffron*, 452 U.S. at 652.

Third, there is a right to privacy with respect to the disclosure of medical information. *See Whalen v. Roe*, 429 U.S. 589, 598-99 (1977) (individuals have a protected

---

[12] Again, as noted previously, this would include both facilities such as Planned Parenthood and anti-abortion pregnancy crisis centers.

interest in avoiding disclosure of personal medical information); *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2267 (2022) (differentiating "the right to shield information from disclosure" from the right to make decisions without governmental interference); *see also* Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191 (1996) (protecting the confidentiality of medical information). Simply the possibility of being identified as seeking reproductive health care "may lead [individuals] to avoid or to postpone needed medical attention." *Whalen*, 429 U.S. at 602. By enacting Section 425.31(i), the County has balanced the interests of speech against the privacy interests of the individuals seeking medical services. Protestors or counselors can attempt to influence individuals, but individuals can also seek to avoid identification by those protestors or counselors. Such a balance is well within the bounds of constitutionality. Indeed, the "First Amendment does not demand that patients at a medical facility undertake Herculean efforts to escape the cacophony of political protests." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 772-73 (1994).

The bubble zone at issue herein is also significantly different from the one in *McCullen*. The *McCullen* zone involved a 35-foot buffer zone, where protestors or sidewalk counselors could not enter or stand at all. 573 U.S. at 471-72. Thus, the Supreme Court found the law was "truly exceptional" and "burden[ed] substantially more speech than necessary to achieve" the interests involved. *Id.* at 490. Given that it prohibited *all* speech and conduct within 35 feet of a clinic, the Supreme Court found

33

it was not narrowly tailored, as there were alternative methods available "without excluding individuals from areas historically open for speech and debate." *Id.* at 494. Here, no one is excluded from "areas historically open for speech and debate." *Id.* at 494.

Furthermore, Appellants can engage in "personal, caring, *consensual* conversations." *Id.* at 489 (emphasis added). Under *McCullen*, even if a counselor were engaged in a fully consensual conversation, it either had to stop once the 35-foot line was reached, or the counselor would have to begin shouting to be heard. Here, Appellants can remain merely 8 feet away from a non-consenting individual, and can be as close to a consenting individual as that individual would like.

Section 425.31(i) is also distinct from the bubble zone that was at issue in *Schenck*. In *Schenck*, the Supreme Court was faced with a 15-foot floating buffer zone that required protestors and counselors to "move as the individual moves" in order to remain 15 feet away at all times. 519 U.S. at 377-78. Specifically, the buffer zone prevented "demonstrating within 15 feet of any person entering or leaving the clinics." *Id.* at 364 (quotation marks omitted). Thus, as an individual approached a protestor, the protestor had to either cease their expressive activity or move away from the individual. That is not the case here. In the County, a protestor or counselor need not move as an individual approaches. Appellants can stand on the sidewalk, directly adjacent to the driveway, and offer literature and initiate conversations as cars turn in or people walk

by. Under the zone in *Schenck*, Appellants would have needed to move away as the car approached.

The *Schenck* Court further noted that there was difficulty with the buffer zone given the requirement that a protester maintain 15 feet of distance from *every* person seeking to enter or leave a clinic, as attempting to move from one individual could lead to moving toward another. *Id.* at 378-79. The Court thus concluded that because "there may well be other ways to both effect such separation and yet provide certainty" that the individual could comply with the buffer zone, the injunction was not sufficiently narrowly tailored. *Id.* The County's law is drawn precisely to avoid this situation: its floating buffer zone effects separation while providing certainty to protestors and counselors. It does this in two ways. First, it provides a scienter requirement—in order to violate Section 425.31(i) the approach must be knowing. Second, it permits the counselor or protestor to stay static—there is no requirement that they maintain a certain distance, only that the protestor or counselor not *approach* within 8 feet of another without that person's consent. Thus, it addresses the *Schenck* Court's concerns and ameliorates the issues the Court identified with the buffer there at issue.

The limitation on the applicability to "protest, education, or counseling" is additional narrow tailoring. A person asking the time, or for quick directions, does not implicate the County's interests in the free-flow in traffic, people seeking access to reproductive health care facilities, or people seeking to keep medical information

confidential. However, protest, education, or counseling—activities that necessarily involve extended discussion or conversation—clearly implicate those interests. Thus, limiting the application to certain *manners* of speech—without reference to the content thereof—further narrowly tailors the bubble zone to meet the County's interests.

Section 425.31(i) is narrowly tailored. It "need not be the least restrictive or least intrusive means of serving the government's interests" (*McCullen*, 573 U.S. at 486), despite Appellants' arguments that the County could have imposed other restrictions (*see* App. Br. at 56-57). *Accord*, *Ward*, 491 U.S. at 797 ("This less-restrictive-alternative analysis . . . has never been a part of the inquiry into the validity of a time, place, and manner regulation. Instead, our cases quite clearly hold that restrictions on the time, place, or manner of protected speech are not invalid simply because there is some imaginable alternative that might be less burdensome on speech.") (quotation marks and citations omitted). Section 425.31(i) provides reasonable time, place, and manner restrictions that are tied to the County's governmental interests, and it therefore survives First Amendment scrutiny regardless of *Hill*.

### d. Section 425.31(i) Leaves Open Alternative Channels for Communication

The final question is whether Section 425.31(i) leaves open ample alternative channels for Appellants to communicate. *Marcavage*, 689 F.3d at 107.

> Although an alternative channel for communication must be available, it is clear that the First Amendment . . . does not guarantee protesters access to every or even the best channels or locations for their expression. The requirement that ample alternative channels exist does not imply that

36

> alternative channels must be perfect substitutes for those channels denied to plaintiffs by the regulation at hand; indeed, were we to interpret the requirement in this way, no alternative channels could ever be deemed ample. All that is required is that an alternative channel be ample--i.e., an adequate channel for communication.

*Id.* (quotation marks and citations omitted; alteration accepted; ellipses in original). So while Appellants believe it is "essential" that they conduct their counseling in a certain manner (App. Br. at 58), that is not—and has never been—the standard for First Amendment review. If it were, then there would never be a content-neutral regulation that survived a challenge, since every challenge is based on a speaker who wants to do what the challenged provision prohibits. Indeed, in *Heffron*, the Supreme Court rejected the challenger's contention that the rule at issue impaired their speech because it could "be done only by intercepting fair patrons as they move about." 452 U.S. at 653. Just because the alternative channel is not exactly what the Appellants want does not make it constitutionally infirm.

"In this Circuit, an alternative channel is adequate and therefore ample if it is within close proximity to the intended audience." *Marcavage*, 689 F.3d at 107 (quotation marks and citation omitted). Here, there is no question that Appellants can counsel "within close proximity" to individuals seeking reproductive health care services, as they can approach up to 8 feet of individuals without consent, and closer with consent. Further, the law permits Appellants to remain stationary as individuals pass, even if that results in their being within 8 feet of—indeed, even mere inches away from—a person

seeking access to a reproductive healthcare facility. Thus, Section 425.31(i) leaves open

ample alternative channels of communication. *See generally Frisby v. Schultz*, 487 U.S. 474,

484 (1988).

## B. Appellants Did Not Establish Irreparable Harm

Appellants' assertion of irreparable harm is based on two things: (1) their

disagreement with *Hill*; and (2) a clear misreading of Section 425.31(i). Under *Hill*,

which Appellants have repeatedly conceded controls here, Section 425.31(i) is a valid,

content-neutral, time, place, and manner restriction in full compliance with the First

Amendment. 530 U.S. at 725. Thus, there is no threat of harm that Appellants will lose

First Amendment freedoms. *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294

(2d Cir. 2021) ("[B]ecause they have failed to demonstrate a likelihood of success on

their First Amendment or other constitutional claims, their asserted harm is not of a

constitutional dimension."); *Marcavage v. Syracuse Police Dep't*, 515 F. App'x 14, 15-16 (2d

Cir. 2013) (affirming denial of a PI where there was no realistic threat of a loss of First

Amendment freedoms, as the Court had upheld similar ordinances).

Further, Appellants clearly misread Section 425.31(i). As the Supreme Court

held, it does not "prevent a leafletter from simply standing near the path of oncoming

pedestrians and proffering his or her material." 530 U.S. at 727. Moreover, there is no

requirement that the pedestrian passing by affirmatively engages with a protestor—"the

statute allows the speaker to remain in one place, and other individuals can pass within

eight feet of the protestor without causing the protestor to violate the statute." *Id.* Thus, Appellants can continue to engage in protest activity, subject to the modest limitations of Section 425.31(i). For example, Appellant Molinelli asserts she "has elected not to be present at all at her usual location, pending judicial intervention, [at] the driveway that was her primary point of encounter with person approaching or leaving the Greenburgh facility." (A89). However, there is no reason, under Section 425.31(i), why she cannot stand adjacent to the driveway and wait for people to approach or leave the facility to interact with them. Similarly, other protestors can stand near the driveway to hold a sign, or offer literature to the occupants of cars entering or leaving the facility.

With respect to the Organizational Appellants, their purported irreparable harm is tied to "the 40-day Local Vigil that began on February 22." (App. Br. at 23). However, that vigil will be long over by the time this appeal is heard on May 9, 2023. Thus, there will be no irreparable harm to the Organizational Appellants.

As such, Appellants have not demonstrated irreparable harm or that the District Court abused its discretion.

## C. The Balance of the Equities/Public Interest Weigh Against Appellants

The Supreme Court, in *Hill*, has found that bubble-provisions like Section 425.31(i) "serve[ ] governmental interests that are significant and legitimate." 530 U.S. at 725. Further, Section 425.31(i) is narrowly tailored and "it leaves open ample alternative channels for communication." *Id.* at 726.

Where a law furthers the government's interests and appellants have not shown a likelihood of success on the merits of a claim of constitutional violation, an injunction does not serve the public interest.[13] *We the Patriots*, 17 F.4th at 296. Thus, Appellants have failed to meet their burden of demonstrating that the District Court abused its discretion.

## **CONCLUSION**

For the foregoing reasons, the County respectfully requests that this Court either dismiss this appeal as not being from an appealable order, or affirm the District Court due to Appellants' lack of standing and not reach the merits of Appellants' appeal. Alternatively, the County respectfully requests that this Court affirm the decision of the District Court in its entirety.

Dated:  March 31, 2023                    Respectfully submitted,

*John M. Nonna*
John M. Nonna
Westchester County Attorney

JUSTIN R. ADIN
Deputy County Attorney

SHAWNA C. MACLEOD
Senior Assistant County Attorney

---

[13] Appellants' reliance on *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013) is misplaced. In *Walsh*, this Court found the appellant had a "substantial likelihood of success on the merits" (*id.* at 487) and therefore found the balance was in favor of protecting a constitutional right, and not in enforcing an unconstitutional law (*id.* at 488). Here, there is no likelihood of success on the merits, and thus no risk of constitutional injury.

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4) because it contains 10,388 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Garamond font and 13-point font for footnotes, using Microsoft Word 2016.

Dated:  White Plains, New York
       March 31, 2023



*John M. Nonna*
John M. Nonna
Westchester County Attorney