# 23-0155-cv

## United States Court of Appeals

*for the*

## Second Circuit

───────────◆────────────

40 DAYS FOR LIFE, a nonprofit corporation of the State of Texas, WHITE PLAINS 40 DAYS FOR LIFE, as unincorporated association of the State of New York, OKSANA HULINSKY, REGINA CREARY MOLINELLI,

*Plaintiffs-Appellants,*

JANE DOE, SALLY ROE,

*Plaintiffs,*

— v. —

COUNTY OF WESTCHESTER,

*Defendant-Appellee,*

COUNTY OF WESTCHESTER COUNTY DEPARTMENT OF PUBLIC SAFETY, TERRANCE RAYNOR, Acting Commissioner of the Westchester Department of Public Safety, in his official capacity, NEW ROCHELLE POLICE DEPARTMENT, CITY OF WHITE PLAINS DEPARTMENT OF PUBLIC SAFETY, GEORGE LATIMER, Chief Executive of the County of Westchester, in his official capacity,

*Defendants.*

─────────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

CHRISTOPHER A. FERRARA
THOMAS MORE SOCIETY
148-29 Cross Island Parkway
Whitestone, New York 11357
(718) 357-1040

MICHAEL MCHALE
THOMAS MORE SOCIETY
10506 Burt Circle, Suite 110
Omaha, Nebraska 68114
(402) 501-8586

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

ADDITIONAL PROCEDURAL BACKGROUND ........................... 4

ARGUMENT ...................................................................................... 9

   I.   Jurisdiction .......................................................................... 9

     A.  "Practical effect." .......................................................... 9

     B.  "Serious and perhaps irreparable harm." ................... 12

     C.  Not a piecemeal appeal.................................................. 13

   II.  Standing.............................................................................. 16

     A.  Credible threat of enforcement..................................... 16

     B.  Organizational Plaintiffs. ............................................ 19

   III.  Plaintiffs Remain Likely to Succeed on the Merits. ........... 22

     A.  Hill v. Colorado.............................................................. 22

     B.  Without *Hill*.................................................................. 26

     C.  No Significant Interest. ................................................. 29

     D.  Narrow Tailoring. ......................................................... 30

     E.  No ample alternatives. .................................................. 34

   IV.  Remaining Factors. ............................................................ 35

CONCLUSION .................................................................................. 36

i

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez*,
    138 S. Ct. 2305 (2018)................................................................ 2, 9, 10, 12

*Act Now to Stop War & End Racism Coal. v. District of Columbia*,
    846 F.3d 391 (D.C. Cir. 2017) ........................................................... 26

*Adam v. Barr*,
    792 F. App'x 20 (2d Cir. 2019) (unpublished)................................. 17

*Agostini v. Felton*,
    521 U.S. 203 (1997) .......................................................................... 23

*Bruni v. City of Pittsburgh*,
    141 S. Ct. 578 (2021)......................................................................... 26

*Carey v. Population Servs. Int'l*,
    431 U.S. 678 (1977) .......................................................................... 19

*Carson v. American Brands, Inc.*,
    450 U.S. 79 (1981) ................................................................... 2, 10, 11

*Cayuga Nation v. Tanner*,
    824 F.3d 321 (2d Cir. 2016) ......................................................... 17, 18

*City of Austin, Texas v. Reagan Nat'l Advert. of Austin*,
    142 S. Ct. 1464 (2022)............................................................ 23, 26, 27

*Clark v. Weber*,
    No. 21-55930, 2021 WL 7208658 (9th Cir. Dec. 9, 2021)............ 15

*Connecticut Parents Union v. Russell-Tucker*,
    8 F.4th 167 (2d Cir. 2021)........................................................... 20, 21

*Defense Distributed v. AG N.J.*,
    972 F.3d 193 (3d Cir. 2020) ............................................................. 10

*Dobbs v. Jackson Women's Health Org.,*
    142 S. Ct. 2228 (2022) ............................................................................. 3, 23

*Doe v. N.Y. State Dep't of Health,*
    No. 20-cv-4817 (S.D.N.Y. 2020) ............................................................ 4, 5

*First Med. Health Plan, Inc. v. Vega-Ramos,*
    479 F.3d 46 (1st Cir. 2007) ....................................................................... 15

*Frisby v. Schultz,*
    487 U.S. 474 (1988) .................................................................................... 31

*Griffin v. Alexander,*
    466 F. App'x 26 (2d Cir. 2007) ................................................................ 15

*Hill v. Colorado,*
    530 U.S. 703 (2000) ........................................................................ 3, 25, 31

*Johnson v. Perry,*
    859 F.3d 156 (2d Cir. 2017) ..................................................................... 10

*Majors v. Abell,*
    317 F.3d 719 (7th Cir. 2003) .................................................................... 36

*Marcavage v. City of New York,*
    689 F.3d 98 (2d Cir. 2012) ................................................................. 28, 34

*March v. Mills,*
    867 F.3d 46 (1st Cir. 2017) ....................................................................... 26

*McCullen v. Coakley,*
    573 U.S. 464 (2014) ............................................................................. *passim*

*Mental Disability L. Clinic, Touro L. Ctr. v. Hogan,*
    519 F. App'x 714 (2d Cir. 2013) .............................................................. 22

*Milltext Indus. Corp. v. Jacquard Lace Co.,*
    55 F.3d 34 (2d Cir. 1995) ........................................................................... 5

*Minority Television Project, Inc. v. F.C.C.*,
   736 F.3d 1192 (9th Cir. 2013) ........................................... 23

*Nat'l Org. for Marriage v. Walsh*,
   714 F.3d 682 (2d Cir. 2013) .......................................... 17, 18

*New York C.L. Union v. New York City Transit Auth.*,
   684 F.3d 286 (2d Cir. 2012) .............................................. 20

*Nnebe v. Daus*,
   644 F.3d 147 (2d Cir. 2011) .............................................. 21

*Oneida Indian Nation of Wis. v. State of N.Y.*,
   732 F.2d 259 (2d Cir. 1984) ................................................ 5

*Picard v. Magliano*,
   42 F.4th 89 (2d Cir. 2022) ........................................... 17, 18

*Price v. City of Chicago*,
   915 F.3d 1107 (7th Cir. 2019) ....................................... 13, 26

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015) ....................................................... 4

*Richardson Greenshields Sec., Inc. v. Lau*,
   825 F.2d 647 (2d Cir. 1987) ............................................... 7

*San Filippo v. United Bro. of Carpenters & Joiners*,
   525 F.2d 508 (2d Cir. 1975) .............................................. 15

*Schenck v. Pro-Choice Network of Western New York*,
   519 U.S. 357 (1997) ...................................................... 33

*SEC v. Mount Vernon Mem'l Park*,
   664 F.2d 1258 (9th Cir. 1982) ........................................... 15

*Simon Prop. Grp., L.P. v. mySIMON, Inc.*,
   282 F.3d 986 (7th Cir. 2002) ............................................ 12

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .................................................................... 16, 18

*Turco v. City of Englewood*,
935 F.3d 155 (3d Cir. 2019) .............................................................. 26

*Tweed-New Haven Airport Authority v. Tong*,
930 F.3d 65 (2d Cir. 2019) .......................................................... 18, 19

*Vermont Right to Life Comm., Inc. v. Sorrell*,
221 F.3d 376 (2d Cir. 2000) .............................................................. 18

*Virginia v. Am. Booksellers Ass'n, Inc.*,
484 U.S. 383 (1988) ........................................................................ 18

*Vitagliano v. County of Westchester*,
No. 22-cv-9370-PMH, 2023 WL 24246 (S.D.N.Y. Jan. 3, 2023) ........................... 1, 11

*Volvo N.A. Corporation v. Men's Int'l Prof'l Tennis Council*,
839 F.2d 69 (2d Cir. 1988) ...................................................... 11, 12, 13

*Whalen v. Roe*,
429 U.S. 589 (1977) ........................................................................ 31

## Statutes

18 U.S.C. § 248(c)(1) ........................................................................ 31

Colo. Rev. Stat. § 18-9-122 ................................................................. 24

Health Insurance Portability and Accountability Act (HIPAA) of 1996 ...................... 31

Westchester County Law § 425.21(a) ........................................................ 35

§ 425.21(b) ................................................................................ 35

§ 425.31(g) ................................................................................ 25

v

§ 425.31(i) ..................................................................................... *passim*

§ 425.91 .......................................................................................... 14

## Rules

Fed.R.Civ.P. 4(b) .............................................................................. 4

Fed.R.Civ.P. 12(b)(6) ...................................................................... 11

Fed.R.Civ.P. 54(b) ............................................................................ 7

## <u>INTRODUCTION</u>

Rather than engaging the indisputable facts and law supporting Plaintiffs' appeal (both procedurally and on the merits), Westchester County simply ignores them—just like its response to Plaintiffs' Motion for Injunction Pending Appeal and Expedited Briefing in February. *See* Doc. 40-1. The County's silence on these matters says it all.

The County again ignores the District Court's explicit statements from the bench *irrevocably* denying Plaintiffs' request for a preliminary injunction against the eight-foot Bubble Zone codified in § 425.31(i), after the Court had already dismissed "exactly the same" (and later-filed) challenge in *Vitagliano v. County of Westchester*, No. 22-cv-9370-PMH, 2023 WL 24246 (S.D.N.Y. Jan. 3, 2023):

- "*I am not going to change my mind on what I have written on* Vitagliano*, **period**.*" SPA.9 at 9:10-11;

- "*I am not going to grant an injunction in this scenario because **it's exactly the same as []** Vitagliano*.*" SPA.17 at 17:23-25;

1

- As to "425.31(i), ***I have already ruled on,*** *and* ***I am not going to give you a different ruling in this case*** *than I did in the* Vitagliano *case*." SPA.4 at 4:9-11[1]

The County also ignores the *directly-on-point* Supreme Court cases *explicitly* approving interlocutory appeals in circumstances like these, where the "*practical effect*" is the denial of an injunction given the "import" of the Court's "actions." *Abbott v. Perez*, 138 S. Ct. 2305, 2319, 2322 (2018); *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981). (Op.Br. 36-40.) Although the *same* District Judge had already issued a Rule 12(b)(6) dismissal in *Vitagliano*—a decision he emphatically declared he would *not chan*ge in this case—the County is determined to ignore the obvious: that "the District Court *necessarily decided* that upon the facts alleged… [plaintiffs] were not entitled to an injunction." *Carson*, 450 U.S. at 86 n.11.

In its misplaced protestations against piecemeal appeals, the County also hides its *express consent* to Plaintiffs' proposed order denying preliminary injunctive relief as to § 425.31(i), knowing full well that an appeal on that issue would follow. App.350, 351. The County  also fails to

---

[1] All emphasis in this brief is added unless otherwise noted.

2

mention its *express advice to the District Court* that it "do[es]n't care one way or the other" about an immediate appeal regarding § 425.31(i) during the pendency of Plaintiffs' motion for preliminary injunction as to the remaining issues. SPA.9:15-25; 18:15-25. Having invited this appeal, the County now performs an expedient *volte-face* and declares it invalid.

On standing, the County ignores its own admission below that while Plaintiffs' "expressi[on]" is allegedly not restricted by other provisions of Chapter 425, it *is indeed "**subject to** . . . **the 8-foot-bubble zone**.*" App.30, 31 (emphasis added). The County *repeats* this admission in its Response Brief to this Court (at 39) ("Appellants can [allegedly] continue to engage in protest [sic] activity, ***subject to*** . . . Section 425.31(i)."). That the County now asserts Plaintiffs face *no credible threat of enforcement* as to the very "bubble zone" it *admits* Plaintiffs' "expressi[on]" is "*subject to*" is appalling.

On the merits, the County entirely ignores the Supreme Court's statement last summer that its decision in *Hill v. Colorado*, 530 U.S. 703 (2000) upholding a similar eight-foot bubble zone "distorted First Amendment doctrines." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2276 & n.65 (2022). Further, in asserting that its Bubble Zone

is content-neutral even without *Hill*, the County refuses to acknowledge that a law is content-based if it restricts speech "based on the message a speaker conveys," including its "*function or purpose*." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163-64 (2015).

The list of the County's studied omissions could go on, but it suffices to say that its strategy of ignoring dispositive facts and controlling law only confirms this Court's appellate jurisdiction. Plaintiffs have standing, and the County's Bubble Zone is a blatant First Amendment violation.

## ADDITIONAL PROCEDURAL BACKGROUND

The County's description of the procedural history of this appeal is littered with errors, omissions, and mischaracterizations.

The County wrongly asserts that *Plaintiffs* were the cause of the initial delay by not obtaining summonses "because" they hadn't first "sought or obtained leave from the Court" to proceed under pseudonyms (Resp.Br. 5)—*entirely ignoring* the Clerk's *ministerial obligation* under federal law to issue summonses where, as here, Plaintiffs properly completed them. *See* Fed.R.Civ.P. 4(b). Indeed, the County's *own citation* to *Doe v. N.Y. State Dep't of Health* extinguishes its argument, as there the Clerk *issued summonses* on behalf of an *anonymous plaintiff*—long

before the Court decided whether anonymity was permissible. *See Doe*, No. 20-cv-4817 (S.D.N.Y. 2020), at ECF Nos. 8, 11, 26. The County protests that anonymity is a "threshold" and "jurisdiction[al]" issue, but a court has "jurisdiction to consider its own jurisdiction" at any time. *Oneida Indian Nation of Wis. v. State of N.Y.*, 732 F.2d 259, 261 (2d Cir. 1984).

The County wrongly blames Plaintiffs for the District Court's refusal to grant "leave" even to *file* a preliminary injunction (PI) motion. Here the County erroneously asserts that *Milltext Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34 (2d Cir. 1995) stands for the principle that a movant must attempt to file the PI motion after being denied permission to do so. (Resp.Br. 6.) Nonsense. In *Milltext* it wasn't clear whether the movant had taken *any steps* to file the motion, yet this Court *still* held that a "judge may not require the court's permission . . . before a party may file the motion." *Milltext*, 55 F.3d at 39. The County *admits* Plaintiffs filed a (mandatory) pre-motion letter in anticipation of their PI

motion (Resp.Br. at 5), yet the District Court still barred them from filing the actual motion.[2]

The County suggests that Plaintiffs should have renewed their PI motion after adding 40 Days for Life (40DFL) and White Plains 40 Days for Life (WP-40DFL) as plaintiffs in an amended complaint on November 23, 2022. (Resp.Br. 6.) But this was impossible: the two pseudonymous Plaintiffs still sought injunctive relief, while the District Court had yet to decide their motion to proceed anonymously, until which the Court *would not allow* a PI motion. App.35 ("*Plaintiffs* may renew their request[] *after* a decision is rendered on the motion to proceed under pseudonyms.").

The County acknowledges that on December 22, two days after Plaintiffs filed their Second Amended Complaint, they also filed a letter requesting that their challenge to § 425.31(i) be treated the same as in *Vitagliano*. (Resp.Br. 7.) But the County omits that the letter requested that any similar order be deemed "a final judgment on the bubble zone issue under [Fed. R. Civ. P.] 54(b)" so Plaintiffs could appeal. App.330.

---

[2] Accordingly, the County's accusation that Plaintiffs' explanation of the delay below was a "gross mischaracterization" is itself a gross mischaracterization.

6

The County claims that Plaintiffs' December 30 pre-motion conference letter requested a PI as to "the provisions of Chapter 425 *other than* Section 425.31(i)." (Resp.Br. 7.) Wrong again: Plaintiffs' letter expressly anticipated a PI motion as to *all* "*seven*" challenged provisions of Chapter 425, including § 425.31(i), *see* App.333, 334, but merely acknowledged *Hill*'s impact on the *bubble-zone claim alone*.

The County asserts that it was Plaintiffs' fault that the conference was not held until nearly three weeks later. Yet again the County errs: Plaintiffs expressly requested relief by "**February 22**" (original emphasis)—nearly six months after their initial PI request and on the day the Spring 40-Day Vigil was to begin. App.332, 336. Unsurprisingly, the County fails to note this Court's teaching (Op.Br. at 43) that in such circumstances "the judge must either conduct a conference *immediately* or permit the motion to be filed *without a conference*." *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987).

The County asserts that Plaintiffs' acceptance of a March 1st reply date shows they were not actually "concern[ed] about the February 22[nd]" date, but Plaintiffs did so primarily on the understanding the Court would sign a proposed order denying a PI to § 425.31(i)—*on*

7

*consent*—so they could promptly appeal. SPA.13:19-14:3, 17:22-18.4.[3] Plaintiffs filed the proposed order ***the next day*, January 19**. App.349-352.

The County's assertion that Plaintiffs had no "true sense of urgency" because they did not file their PI motion on January 18th is also baseless. Plaintiffs agreed to the briefing schedule on the understanding that *on consent* they would immediately appeal as to § 425.31(i), the "worst restriction" of Chapter 425. (Op.Br. 16.) Plaintiffs' counsel can also represent that they had completed their motion papers by *September 2022*, as evidenced by their August 27th pre-motion request to file an oversized brief of an "8 additional pages." (Dist.Ct.Dkt. 8.) But those papers had to be substantially amended given the shifting proceedings up to January 18.

The County faults Plaintiffs for filing their Notice of Appeal on February 3 and their IPA motion on February 10th. But these filings

---

[3] While the District Court said it was "not committing to a course of conduct," it went on to state that partial denial of injunctive relief as to § 425.31(i) "seems to me to be something that's entirely reasonable," and "I think the simplest thing on consent would be [that] nobody objects to me denying the motion . . . for the reasons set forth in the *Vitagliano* decision." SPA.13:22-23, 17:21-25, 18:15-16, 19:1-2.

were *weeks in advance* of the February 22nd deadline, in the midst of multiple deadlines facing Plaintiffs' counsel in other cases. And the County fails to note that in *this* Court's February 22nd order *granting* Plaintiffs' motion for expedited briefing, it *also* ordered that the case be "calendar[ed] . . . for the first available panel after the appeal is fully briefed." No. 23-155 Doc. 56. The County's accusations that Plaintiffs have been dilatory find no support in the record as accurately presented.

## **ARGUMENT**

## I. **Jurisdiction**

### A. **"Practical effect."**

The County's position that this Court lacks jurisdiction here is predicated on its mistaken view that the only order on review is the District Court's January 25th summary denial of Plaintiffs' proposed order denying a PI as to § 425.31(i). (Resp.Br. 13.) As noted, the County never acknowledges controlling Supreme Court precedent on the appealability of District Court "actions" whose "practical effect" is a denial of injunctive relief. *Abbott*, 138 S. Ct. at 2319, 2322.

Plaintiffs' Notice of Appeal expressly appeals from *the combination of* the District Court's *repeated, categorical* statements denying any possibility of a PI against § 425.31(i) in light of *Vitagliano, and* the

9

Court's January 25th order declining to enter the consented-to proposed order. App.352-53. Continuing its systematic avoidance of key facts and controlling law, the County ignores the rule that "[t]he contents of the notice of appeal define the scope of the appellate court's jurisdiction." *Johnson v. Perry*, 859 F.3d 156, 167 (2d Cir. 2017).

The District Court's actions from which Plaintiffs appeal "effectively foreclosed" "consideration of the merits of [plaintiffs'] injunction claim" as to § 425.31(i). *Carson*, 450 U.S. at 89 n.12. This is true, as the Supreme Court has recognized, even where "the District Court did not *call* its orders 'injunctions'," or even if "it disclaimed the term." *Abbott*, 138 S. Ct. at 2319 (emphasis in original).

The County invokes a Third Circuit case that actually supports *Plaintiffs'* position. In *Defense Distributed v. AG N.J.*, 972 F.3d 193, 199 (3d Cir. 2020), the Court held that *staying* a PI motion is not an effective denial but merely *delays* it. The Court also held, however, that determining an effective denial requires "*a fair reading of the order **and the record**,*" stressing that the District Court did "not **pass on the legal sufficiency of any claims for injunctive relief**." *Id.* Here, the District Court *directly passed on the merits* of a *materially identical challenge* to

10

§ 425.31(i) in *Vitagliano* by *outright dismissing it* under Rule 12(b)(6) (i.e., for "*failure to state a claim*"). *See Vitagliano*, 2023 WL 24246, at \*3-\*5. It then repeatedly told Plaintiffs at the January 18th conference that it would not grant their request for a PI against § 425.31(i) "because ***it's exactly the same as [] Vitagliano***." SPA.17:23-25; 4:9-11. That is not a mere "postpone[ment]… of petitioners' injunctive claim." *Carson*, 450 U.S. at 89 n.12.

The County argues that Plaintiffs wrongly rely on *Volvo N.A. Corporation v. Men's Int'l Prof'l Tennis Council*, 839 F.2d 69 (2d Cir. 1988), which involved an interlocutory appeal from *both* a *partial* and *de facto* denial of injunctive relief. The County notes that *Volvo* recognized appellate jurisdiction only over an appeal from a denial of injunctive relief "*with prejudice*," but lacked jurisdiction over "claims [that] were dismissed with leave to replead." (Resp.Br. 13.) The County's argument that *Volvo* doesn't apply here because "there was no final disposition" *is pure question begging*. (*See id.*) The District Court's rulings plainly had "the 'practical effect' of *definitively denying* the [requested] injunctive relief sought by plaintiffs-appellants," *Volvo*, 839 F.2d at 74, with the

11

Court insisting "*I am not going to change my mind on what I have written on* Vitagliano, ***period***." SPA.9:10-11. That is a denial, not a delay.[4]

## B.    "Serious and perhaps irreparable harm."

The District Court's ruling is immediately appealable if it "threaten[s] serious and perhaps irreparable harm if not immediately reviewed." *Abbott*, 138 S. Ct. at 2319. The County offers no real argument against irreparable harm. That is because, as noted (Op.Br. 40-44), irreparable harm is self-evident: (1) the Bubble Zone blatantly prohibits protected speech based on content; (2) Plaintiffs requested a PI and a Rule 54(b) dismissal below, and then expedited appellate review; (3) Plaintiffs could well be prejudiced if their claim against the Bubble Zone were decided in *Vitagliano* while they were pointlessly forced to wait out "protracted litigation below" on other issues. *Volvo*, 839 F.2d at 76.

Tellingly, the County admits that Plaintiffs could intervene in *Vitagliano* (Resp.Br. 15), thus conceding that Plaintiffs' rights are at stake in that appeal.

---

[4] The County's citation to *Simon Prop. Grp., L.P. v. mySIMON, Inc.*, 282 F.3d 986, 989 (7th Cir. 2002) does not help it. There the District Court *granted* an injunction but merely delayed its implementation.

12

### C.  Not a piecemeal appeal.

The County admits this appeal involves "a discrete issue" (Resp.Br. 14), as the Bubble Zone is distinct from the other challenged provisions of Chapter 425 and its validity hinges on the formalistic application of *Hill. See Price v. City of Chicago*, 915 F.3d 1107, 1119 (7th Cir. 2019).

But the County bizarrely—and wrongly—asserts that an appeal involving a "discrete issue" is "the very definition of piecemeal review," because Plaintiffs might also eventually appeal the District Court's rulings on their *other* challenges to Chapter 425, which would "lead[] to two separate appeals relating to their initial (single) underlying request for a PI." (Resp.Br. 14.) But as the County itself notes, *Volvo* recognized the immediate appealability of discrete issues dismissed with prejudice, *even while* issues that could *later be appealed* remained below. *See Volvo*, 839 F.2d at 75-76.

The real issue is whether "equivalent injunctive relief" as to § 425.31(i) could be had by litigating the other challenges below, such that this court *would have to consider the same legal issues in multiple appeals. Volvo*, 839 F.2d at 76. No "equivalent relief" from the Bubble

13

Zone is available on the remaining issues below. Nor does the County assert otherwise.

The County's claim that there is an increased "risk of obtaining inconsistent outcomes regarding *different provisions* of the same law" (*id.*) makes no sense. In every case of a multi-pronged speech restriction, different provisions of the same law can fare differently. Thus Chapter 425 contains a *"[s]everability" clause* affirming that if any "*part of this Local law*" is deemed "invalid, such judgment *shall not affect, impair, or invalidate* the remainder thereof." § 425.91. App.214.

The County also protests (wrongly) that Plaintiffs' appeal has "stark procedural differences" with *Vitagliano* as Plaintiffs appeal from denial of a PI, while *Vitagliano* involves a Rule 12(b)(6) dismissal. (*Id.* 15.) But a panel of this Court has *already* ordered that the two appeals be heard "in tandem." No. 23-155 Doc. 56. And the County acknowledges *Vitagliano* involves "the ultimate question of Section 425.31(i)'s constitutionality on the merits." (*Id.*) Nor does it dispute that the primary "if not dispositive" factor in Plaintiffs' appeal is "likelihood of success on the merits"—the *same* "ultimate question" as in *Vitagliano*. (Op. Br. 45.)

14

The County disputes Plaintiffs' citation to *San Filippo v. United Bro. of Carpenters & Joiners*, 525 F.2d 508 (2d Cir. 1975), because that case involved review of denial of a PI and a motion to dismiss respecting "the same parties." (Resp. Br. 15.) But there is no logical difference in reviewability between the same or different parties in two related cases, involving the same "ultimate question." Hence some courts have recognized that appeal from "the denial of [a] motion for preliminary injunction *merges into the final judgment*" in the separate appeal from a dismissal. *Clark v. Weber*, No. 21-55930, 2021 WL 7208658, at *1 (9th Cir. Dec. 9, 2021) (citing *SEC v. Mount Vernon Mem'l Park*, 664 F.2d 1258, 1361 (9th Cir. 1982)). This principle "serves the salutary purpose of ***saving both parties the needless expense of further prosecution of the suit*** where the pleadings demonstrate the suit is hopeless." *First Med. Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46, 50 (1st Cir. 2007). The Second Circuit effectively follows the same practice by reviewing two appeals together. *See, e.g.*, *Griffin v. Alexander*, 466 F. App'x 26, 27 (2d Cir. 2007) (simultaneously reviewing appeal "from the denial of … a preliminary injunction, and . . . the dismissal of [appellant's] complaint").

Accordingly, this Court has jurisdiction over Plaintiffs' appeal.

## II. Standing.

The County argues for the first time on appeal that there is no credible threat that the Bubble Zone will be enforced.[5] It also argues that Plaintiffs 40DFL and WP-40DFL lack organizational and/or associational standing. The County is wrong on both counts.

### A. Credible threat of enforcement.

While the County admits that Plaintiffs' "expressi[on]" is "subject to" the Bubble Zone, *see* App.30, 31, 339—thus extinguishing its own standing argument—Plaintiffs analyze the issue anyway. The County does not deny that Plaintiffs "inten[d] to engage" in conduct actually (let alone "arguably") "affected with a constitutional interest," or that such conduct is "arguably proscribed" by the Bubble Zone. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159-62 (2014).

---

[5] The County misleadingly argues in a footnote that it did not assert lack of credible threat below "only because Appellants chose to file this" entirely proper appeal, "before the County had the opportunity to brief any issues regarding Section 425.31(i) and Appellants." (Resp.Br. 16.n.6.) But, as noted, the County *admitted* in multiple pre-motion letters below that Plaintiffs' speech *is* "subject to a single" and allegedly "modest 'place' regulation," i.e., "the 8-foot bubble zone." App.30, 31, 339. The District Court thus observed that the individual plaintiffs "clearly have standing," without objection by the County. SPA.10:23-24.

The County argues only that Plaintiffs have "imaginary or speculative fears of prosecution" and face no "credible threat" of enforcement, a third requirement for pre-enforcement standing. (Resp.Br. 17 (quoting *Adam v. Barr*, 792 F. App'x 20, 22 (2d Cir. 2019) (unpublished)). That is obviously false.

As this Court teaches, the standard for pre-enforcement standing "sets a low threshold and is quite forgiving," and is met where it is "reasonable enough" to fear that one's speech would be punished under the challenged law. *Picard v. Magliano*, 42 F.4th 89, 98-99 (2d Cir. 2022). Moreover, this standard is "somewhat relaxed" in First Amendment cases, given serious constitutional concerns with self-censorship. *Nat'l Org. for Marriage v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). "Courts are generally willing to *presume* that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). That is this case.

The County contends there is no credible threat of enforcement absent prior enforcement or official announcement of an intention to enforce. (Resp.Br. 17-19.) Putting aside the County's own dispositive admission that Plaintiffs are "subject to" the Bubble Zone, the County's

17

own citations show that past enforcement or announced intent are merely *sufficient* but not *necessary* to pre-enforcement standing. *See Picard*, 42 F.4th at 100; *Susan B. Anthony List*, 573 U.S. at 164-65; *Cayuga Nation*, 824 F.3d at 331.

The County's position is further (and yet again) undermined by its own citations. The County cites *Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65, 69-70 (2d Cir. 2019), which holds that where—as here— "a statute *specifically proscribes* conduct, the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against it." *Tweed*, 930 F.3d at 71; *see also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (credible threat exists if "law is aimed directly at plaintiffs, who, if their interpretation [] is correct, will ... risk criminal prosecution");[6] *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) (statute "could easily be construed as" applying to plaintiff); *Nat'l Org for Marriage*, 714 F.3d at 689 ("plaintiff had not been charged .... [but] believed [] its advocacy activities did not comply with the law").

---

[6] The County admits "there is the potential for criminal prosecution under Chapter 425." (Resp.Br. 18. n.7.)

Standing is thus presumed in this circumstance absent "a disavowal by the government or another reason to conclude that no such intent existed." *Tweed*, 930 F.3d at71. The County has made no such disavowal.  On the contrary, it avows the Bubble Zone's application to Plaintiffs.

Thus, there can be no serious argument that Plaintiffs' standing is based on the "mere existence of a [general] law" (Resp.Br. 19), rather than a credible threat of enforcement of the Bubble Zone's *specific* prohibition of Plaintiffs' expression: i.e., "approach[ing]" within eight feet of another outside an abortion facility to "counsel" and "educate" regarding abortion—to which content-based restriction the County admits Plaintiffs are subject.

## B.    Organizational Plaintiffs.

As noted (Op.Br. 46.n.9), where one plaintiff has standing (as both Hulinsky and Molinelli do), there is "no occasion to decide the standing of" 40DFL and WP-40DFL here. *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682 (1977).

That said, as to the other Plaintiffs, the County's arguments do not refute organizational standing. That 40-Day Vigils in Westchester

County "continue to be promoted and attended" (Resp.Br. 21) ignores the reality that they are *hindered and diminished in form*. App.328-29. By restricting WP-40DFL's ability to engage in sidewalk counseling and leafletting—activities core to its mission (App.64 ¶23)—the law has "impeded, and will continue to impede, the organization's ability to carry out this aforementioned responsibility." *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 295 (2d Cir. 2012). The same is true for 40DFL, which relies on WP-40DFL to carry out its core pro-life mission in the County (App.63-64 ¶¶16-20). Chapter 425 has also chilled participation in 40-day "Local Vigils," ostensibly causing a 50% reduction in attendance during the Fall Vigil. App.329 ¶16. Thus, both organizational Plaintiffs' "ability to carry out [their] mission" is being "irreparably harmed," *id.* at 305—a direct injury-in-fact.

The County's citation to *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167 (2d Cir. 2021) is inapposite. There, a rule establishing a racial quota in schools did not directly impede the organizational plaintiff, a nonprofit advocacy group. *Id.* at 170-71. While the rule *indirectly* impacted the organization, there was no "involuntary" "cost" that "adversely affect[ed] … activities the organization *regularly*

*conducted* [] in pursuit of its organizational mission." *Id.* at 173-74. The group's expenditures—e.g., for "bus tours" to protest the quota rule—were not "reasonably necessary to continue an *established core activity*" but rather were "new activities" undertaken *voluntarily*. *Id.* at 174.

Even assuming *arguendo* Chapter 425 affects WP-40DFL and 40DFL only indirectly, they have suffered only *involuntary burdens* on *core* activities. *Russell-Tucker*, 8 F.4th at 173. The Second Circuit recognizes that "litigation expenses" to protect core activities are "sufficient to support standing." *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011). Here, 40DFL has been "forced [] to divert resources… in order to contest the challenged provisions of Chapter 425" (App.91 ¶100). That diversion (including devoting time to this litigation that would otherwise have been spent on core activities) is "reasonably necessary," *Russell-Tucker*, 8 F.4th at 174, to continue both organizational Plaintiffs' core activities in Westchester County, including "training" and "encourag[ing]" participants in 40-Day Vigils to "approach persons entering or leaving the [abortion] facility, or passersby, to converse or offer literature." App.63 ¶18. *See Nnebe*, 644 F.3d at 157; *see also Mental*

21

*Disability L. Clinic, Touro L. Ctr. v. Hogan*, 519 F. App'x 714, 717 (2d Cir. 2013).

The County's contention that 40DFL is engaging in only "voluntary litigation" and that it fails to "allege [] it frequently participates in litigation as part of it mission" is irrelevant. Because leafletting and sidewalk counseling are core activities of both organizations, and 40DFL and WP-40DFL have undertaken this litigation as *necessary* to protect those activities, they easily establish organizational standing even assuming, arguendo, the Bubble Zone impacts them only indirectly.[7]

## III. Plaintiffs Remain Likely to Succeed on the Merits.

The Bubble Zone is a brazenly content-based restriction on Plaintiffs' speech that must survive strict scrutiny. Because it is wholly untethered from any hypothetically legitimate (let alone compelling) interest, it indubitably fails even intermediate scrutiny.

### A. Hill v. Colorado.

While *Hill* nominally controls, the County wrongly argues it is "indisputable" that the Bubble Zone is "constitutional." (Resp.Br. 24.) On

---

[7] In light of Second Circuit precedent refusing to recognize associational/representational standing in §1983 claims, *Nnebe*, 644 F.3d at 156, WP-40DFL does not ask this Court to depart from that precedent at this time. But WP-40FL also has *organizational* standing.

the contrary, under current First Amendment doctrines the Bubble Zone egregiously violates Plaintiffs' First Amendment rights and is quintessentially "unconstitutional." Op.Br. 47-58. But under *Agostini v. Felton*, 521 U.S. 203, 237 (1997), apparently the Supreme Court must officially reverse the mistake it made in *Hill* and vindicate the actual Constitution, even though the Supreme Court itself has declared that *Hill* "distorted First Amendment doctrines," *Dobbs*, 142 S. Ct. at 2276 & n.65, and is effectively a dead letter, *see City of Austin, Texas v. Reagan Nat'l Advert. of Austin*, 142 S. Ct. 1464, 1475 (2022); *but see Minority Television Project, Inc. v. F.C.C.*, 736 F.3d 1192, 1213 (9th Cir. 2013) (Kozinski, J., dissenting). At the very least, *Hill*'s rationale "has been hallowed out as if by termites," *Minority Television*, 736 F.3d at 1223 (Kozinski, J., dissenting), even if the Supreme Court must deliver the final blow.

The County argues that the only difference between its Bubble Zone and Colorado's is that the County's prohibits passing "any material" instead of "leaflet[s]" and "handbill[s]" inside the bubble. (Resp.Br. 25.) But the Bubble Zone uniquely defines "eight-feet" as measured even from "any natural or artificial extension of a person, including . . . an

23

outstretched arm or hand-held sign." § 425.21(b) (App.217); *cf.* Colo. Rev. Stat. § 18-9-122. The County expanded upon the Colorado statute in part to capture what County legislators called "Trojan Horse gifts" such as "little roses," food, or drink that pro-life sidewalk counselors have been known to offer as a "bridge" to conversation. App.101-02 ¶124; 109-10, ¶139.

The County missteps badly by arguing that the Bubble Zone is "*more* content-neutral than the Colorado statute" because it applies to *both* abortion facilities and pro-life pregnancy resource centers providing "reproductive health care," whereas Colorado's applies only to facilities that provide medical treatment. (Resp.Br. 25 (original emphasis).) The County *effectively admits* that a law is content-based if it restricts speech outside of some but not other facilities—including the County's Bubble Zone insofar as it applies only to "reproductive health care facilities" (abortion or pro-life) and not other facilities. § 425.31(i). Plaintiffs agree.[8]

_____

[8] The County says its Bubble Zone "protects both sides of the debate" in light of recent "protests by pro-choice advocates" targeted at "pregnancy crisis centers." (Resp. 25-26.) But there is no phenomenon of *sidewalk counseling* outside of pro-life pregnancy centers that the Bubble Zone actually restricts. Worse, the pro-choice "protests" the County itself notes have been *violent attacks* on pro-life pregnancy centers over the past year. (Resp. 26 n.9.) The Bubble Zone does *nothing* to stop these. Nor do

The County also argues its Bubble Zone is "*more* narrowly tailored than the Colorado statute" because it applies only to *reproductive* (not *all*) health care facilities. (Resp. 25 (original emphasis). On the contrary, there is no fit, let alone a narrow one, between the Bubble Zone and the incident of trespass inside a local abortion facility, recited as the pretext for its adoption, which trespass resulted in *arrest and conviction under existing law*. App.94-95; 116; 196-197. The Colorado statute, on the other hand, passed in 1993 after bipartisan testimony that "demonstrations *in front of* abortion clinics [*actually*] impeded access to those clinics and were often confrontational." *Hill*, 530 U.S. at 710.[9] There is zero evidence of that sort in the record below.

The County argues that "*Hill* has been applied as controlling law by numerous Circuit Courts" (Resp.Br. 26); however, all but one of its citations did *not* involve a similar eight-foot bubble zone. *See March v. Mills*, 867 F.3d 46, 64 (1st Cir. 2017) (noise ordinance); *Turco v. City of*

---

Plaintiffs challenge § 425.31(g), prohibiting "physically damaging a reproductive health care facility so as to interfere with its operation." App.218. The County's argument that it is protecting "both sides of the debate" is farcical.

[9] Plaintiffs, however, do not concede the Colorado bubble zone was *actually* narrowly tailored.

*Englewood*, 935 F.3d 155, 165-67 (3d Cir. 2019) (fixed buffer zone); *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 403-04 (D.C. Cir. 2017) (sign regulation). Only the Seventh Circuit's decision in *Price* applied *Hill* to a similar bubble zone—and only begrudgingly, after explaining that "*Hill* is incompatible with current First Amendment doctrine." *Price*, 915 F.3d at 1117.

The County notes that Justice Thomas has acknowledged that *Hill* has not been overruled, *Bruni v. City of Pittsburgh*, 141 S. Ct. 578 (2021), but omits mentioning his impassioned dissent, joined by Justices Gorsuch and Barrett, in *City of Austin*, which approvingly cited *Price* and declared that *Hill* is now "defunct." *City of Austin*, 142 S. Ct. at 1491 (Thomas, J., dissenting).

In sum, the Bubble Zone is anything but "constitutional."

## B.  Without *Hill*.

The County also argues the Bubble Zone would be constitutional even without *Hill*. That is manifestly untrue.

The County says the Bubble Zone restricts only "*types* or *manners* of speech . . . irrespective of the speaker's message, and plainly does not prohibit speech of any particular content." (Resp.27 (emphasis original).)

26

That claim is nonsense: § 425.31(i) expressly prohibits only *certain types* speech uttered for a *particular* "purpose." App.218. As the Supreme Court has recently made clear, a law restricting speech based on its "function *or purpose*" is content-based. *Reed*, 576 U.S. at 163. And the Court has also made clear that a law is "content based if it require[s] enforcement authorities to examine the content of the message to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014).

The County *admits* a person can enter the Bubble Zone "to ask i[f] it is supposed to rain later," but "*cannot* approach within 8 feet (without that other person's consent) to educate [regarding] the impact of climate change on weather patterns." (Resp. 28 (original emphasis).) That distinction literally *requires enforcement authorities to listen closely to the content* of the speaker's message to discern a violation.

The County points to *City of Austin*'s holding that "restrictions on speech may require some evaluation of the speech." *City of Austin*, 142 S. Ct. at 1464. But aside from traditional carve-outs for some content-based restrictions (e.g., against fraud, defamation, etc.), *City of Austin* permits speech evaluation *only* where the "*substantive* message itself is *irrelevant* to the application of the provisions." 142 S. Ct. at 1473 (authorizing

27

evaluation of *locational* element of billboards). The County's Bubble Zone requires evaluating the *very heart* of one's protected *substantive* message: e.g., whether it is "protest[ing]" (rather than promoting) abortion, or "educat[ing]" or "counsel[ing]" about alternatives to abortion, rather than asking about the weather. That is the essence of a content-based restriction.

The County's further citations to cases restricting "activity," not speech, are all inapposite. (Resp.Br. 28.) For instance, the County admits that in *Marcavage v. City of New York*, 689 F.3d 98, 104 (2d Cir. 2012), this Court deemed content-neutral a prohibition on *all* demonstrations within a designated area during a Republican National Convention. (*Id.*) But the County's Bubble Zone expressly allows *some* speech inside the eight-foot zone, but not *other* speech, based *entirely on the speaker's purpose* in speaking. *Marcavage* radically undermines the County's position.

The County argues it is irrelevant that the Bubble Zone applies only outside reproductive health facilities, not other places. (Resp.Br. 29.) Here the County flatly contradicts its own argument, noted above, that the Bubble Zone is allegedly "*more* content-neutral" than Colorado's

bubble zone because it applies outside of both abortion facilities and pro-life pregnancy centers. *See supra*. It is precisely selective locational application that compromises content neutrality, as the County recognized. *Accord McCullen*, 134 S. Ct. at 500-505 (Scalia, J., dissenting). The County can't have it both ways.

### C. No Significant Interest.

While the Bubble Zone must therefore survive *strict* scrutiny (which the County does not even attempt to satisfy), it also easily fails intermediate scrutiny, as it is not narrowly tailored in furtherance of a significant interest.

The County quotes Chapter 425's asserted interests in promoting "public health" and "order," access to reproductive health services, free flow of traffic, and medical privacy as manifestly "significant" under Supreme Court precedent. (Resp.Br. 30.) But as Plaintiffs have observed (contrary to the County's argument that they have not disputed the Bubble Zone's purported interests), it is *never* a legitimate (let alone "significant") interest to punish speech because it "cause[s] offense or make[s] listeners uncomfortable" outside abortion facilities. *McCullen*, 573 U.S. at 481. (Op.Br. 48, 57.) But County legislators made clear that

29

avoiding such offense, including the undesirable effects from alleged "Trojan Horse gifts," *see supra*, was the very reason for the Bubble Zone.[10]

### D. Narrow Tailoring.

The County does not even attempt to argue it "seriously undertook to address the [alleged] problem with less intrusive tools," *McCullen*, 573 U.S. at 494, or explain why a FACE Act injunction, for example, would somehow not accomplish its alleged interests. (Op.Br. 52-58.) That failure alone dooms the law. Regardless, even the County's own narrow tailoring theories fail.

The County falsely asserts Plaintiffs may "stand *anywhere* in the public right-of-way to *provide counseling*" (Resp.Br. 31), when it earlier states Plaintiffs "*cannot* approach within 8 feet (without [] consent) to *educate*" on certain matters (*id.* 28 (original emphasis)), including abortion alternatives. Indeed, Plaintiffs may *not effectively* "attempt to offer literature as drivers turn into the parking lots," as the County

---

[10] The County says this is a "cherry-pick[ed]" interest that doesn't reveal what motivated other legislators, but the record is rife with evidence that other legislators shared similar motives. *See* App.116 ¶151 (E.g., Legislative Committee Chair Smith stating Chapter 425 "creat[es] [] safe zones" to "mak[e] it harder . . . to verbally harm" women seeking abortion).

30

wrongly says, given the law's explicit definition of "eight feet" to include an "outstretched" leaflet, which cannot breach the bubble without clear "consent" on pain of *criminal punishment*. App.217.

The County absurdly contends the Bubble Zone prevents individuals seeking abortion from being "swarmed by protestors," *without any evidence this was occurring in the County*, or that FACE could not be effectively deployed against such activity. *See* 18 U.S.C. § 248(c)(1).

The County conjures up "a right to privacy" *on public sidewalks* outside abortion facilities, misleadingly invoking *Whalen v. Roe*, 429 U.S. 589 (1977), which *upheld* a New York law requiring *disclosure to state officials* of *prescriptions for certain medical drugs*. That has *nothing* to do with pro-life speech on public sidewalks. The County even bafflingly invokes the Health Insurance Portability and Accountability Act (HIPAA) of 1996. (Resp.Br. 33.) As Justice Scalia's *Hill* dissent observed, the Supreme Court has acknowledged "we are often 'captives' outside the sanctuary of the home and subject to [even] objectionable speech." *Hill*, 530 U.S. at 752 (quoting *Frisby v. Schultz*, 487 U.S. 474, 484 (1988)). Further, the County's argument that it is helping "individuals . . . avoid

31

identification by [] protestors or counselors" *directly contradicts its own (false) assertion* that "there *is no question* that Appellants can counsel *within close proximity* to individuals seeking" abortion, i.e., "up to 8 feet of individuals without consent, and closer with consent." (Resp.Br. 37.) The County thus admits the Bubble Zone is not narrowly tailored to its own asserted (but illegitimate) interests.

Nor is the Bubble Zone "significantly different" from the buffer zone struck down in *McCullen*, as the County argues, because the *practical effect* of the criminal Bubble Zone statute is the same: "compromis[ing] petitioners' ability to" engage in sidewalk counseling and "mak[ing] it substantially more difficult" to "distribute literature . . . as drivers turn into the parking lots"—without any effort at less restrictive means. *McCullen*, 573 U.S. at 488; App.328 ¶14. The Bubble Zone's allowance for "consen[ual]" conversation also fails, because it prohibits Plaintiffs' *normal practice of sidewalk counseling*, involving "peacefully *approaching* expectant mothers" outside abortion facilities, without first making a potentially off-putting request for consent to approach. (Op.Br. 9-13.)

The same problem scuttles the County's attempt to distinguish *Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357 (1997). The County notes *Schenck* struck down floating 15-foot *buffer* zones that required "the protestor [] to either cease their expressive activity or move away from the individual." (Resp.Br. 34.) *That is exactly the case here*: Plaintiffs allegedly "need not move as an individual approaches" (*id.*) *only if they stand stock still and thus avoid their normal methods of sidewalk counseling.* Indeed, the County *admits* the Bubble Zone requires Plaintiffs to "stay static" within the zone (Resp.Br. 35)—thus criminalizing the forbidden peaceful "approaches" for leafletting and conversation.

The County proclaims this requirement provides the "certainty" that was lacking in *Schenck*, without acknowledging the Supreme Court's holding in *McCullen* that while categorical restrictions "on the sidewalk [are] easy to enforce, the prime objective of the First Amendment is not efficiency." 573 U.S. at 495.

The County also absurdly maintains that "protest, education, or counseling" "necessarily involve[s] extended discussion or conversation" which can clog up sidewalks, with no evidence whatsoever that this is

33

true. (Resp.Br. 35-36.) Outstretching one's hand to offer a leaflet that "educates" on abortion can take only a moment—and yet this is explicitly prohibited under criminal penalty absent clear consent.

The County says Plaintiffs wrongly insist that it use the *least* restrictive means. (Resp.Br. 36.) First, the County's argument *effectively admits* the Bubble Zone is *not least restrictive* and thus fails *strict* scrutiny, the test applicable here. Second, Plaintiffs' actual intermediate-scrutiny argument is that the County has not shown that other alternatives would be *less effective* at achieving any genuinely significant interests: e.g., a private FACE suit against repeat trespassers.

"Given the vital First Amendment interests at stake, it is not enough for [the County] simply *to say* that other approaches have not worked." *McCullen*, 573 U.S. at 498.

### E. No ample alternatives.

The County's argument that the Bubble Zone provides ample alternative channels of communication is predicated on its false view that Plaintiffs are like the political "protesters" in *Marcavage* who had no need to stand in the desired zone to adequately communicate their message. (Resp.Br. 36-37 (citing *Marcavage*, 689 F.3d at 107).) But Plaintiffs are

*sidewalk counselors* with recognized needs "to initiate close, personal conversations that they view as essential to sidewalk counseling." *McCullen*, 573 U.S. at 487. Effectively pushing Plaintiffs eight feet back from the driveway or requiring them to "remain stationary as individuals pass" (Resp.Br. 37) are thus hardly "adequate" alternatives.

Accordingly, the County's arguments that the Bubble Zone passes intermediate scrutiny utterly fail.

## IV. Remaining Factors.

As to irreparable harm, the County admits that if its Bubble Zone violates the Constitution, Plaintiffs are suffering irreparable harm. (Resp.Br. 38.) But the County also wrongly asserts that Plaintiffs "misread Section 425.31(i)" because it allows them to stand stationary near the driveways of abortion facilities. (Resp.Br. 38-39.) *It is the County* that willfully misreads its own statute: unlike Colorado's, it defines "approach" as "to move nearer in distance to someone"—ostensibly even *one inch* without "consent." § 425.21(a). And it defines "eight feet" to criminalize even extending one's arm, or a pamphlet in one's hand, into the forbidden zone without such consent. § 425.21(b). In suggesting that Plaintiffs should be content to stand motionless near the Planned

35

Parenthood driveway, the County ignores the reality that "most people are frightened of violating criminal statutes." *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003). Plaintiffs' resulting reasonable self-censorship is ongoing irreparable harm.

The County argues that 40DFL and WP-40DFL are not suffering irreparable harm merely because the Spring 2023 40-Day Vigil has ended—failing to acknowledge that these vigils occur *twice every year*, including this Fall. (Op.Br. 13, 15.) These Plaintiffs have suffered and will continue suffering irreparable harm.

Likewise, the County acknowledges the balance of harms and public interest weigh in its favor *only* if the Bubble Zone is constitutional. (Resp. 40.) It plainly is not. (Op. Br. 59-60.)

## **CONCLUSION**

Accordingly, this Court has jurisdiction over this appeal; *Hill* should be overruled by the Supreme Court; and the Bubble Zone should ultimately be enjoined.

Respectfully submitted,

/s/ Christopher A. Ferrara
Christopher A. Ferrara
Special Counsel–Thomas More Society

36

148-29 Cross Island Parkway
Whitestone, Queens, New York
11357
Telephone: 718-357-1040
cferrara@thomasmoresociety.org
*Counsel for Plaintiffs-Appellants*

/s/ Michael G. McHale
Michael G. McHale
Senior Counsel
THOMAS MORE SOCIETY
10506 Burt Circle, Ste. 110
Omaha, NE 68114
Telephone: 402-501-8586
mmchale@thomasmoresociety.org
*Counsel for Plaintiffs-Appellants*

37

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a) and Local Rule 32.1(a)(4) because, excluding the parts of the brief exempted by Fed. R. App. P. 32, this brief contains 6,978 words.

2.      This document complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5)-(7) because this document has been prepared using Microsoft Word in 14-point Century Schoolbook font.

/s/ Michael McHale